**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0708
Facsimile: (914) 206-3656
Email: pfraietta@bursor.com

*Attorney for Plaintiff*

[*Additional counsel listed on the signature page*]

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOHN DOE, individually and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>JEFF ENGEL, ERIN LAVIGNA, TIMOTHY CIRAOLO, LAUREN HEDGPETH, SEAN HLAVAC, SANDRA PHILLIPS, JENNIFER LAWRENCE, KIM KENNEDY, HALLIE JOHNSON, and HALLIE JACOBS,<br><br>Defendants. | Case No. 3:25-cv-02429-JES-VET<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date: February 4, 2026<br>Time: 10:00 am<br>Courtroom: 4B<br>Judge: Hon. James E. Simmons, Jr. |

# TABLE OF CONTENTS

**PAGE(S)**


I. INTRODUCTION ........ 1

II. ARGUMENT ........ 2

A. The *Colorado River* Doctrine Does Not Warrant a Stay or Dismissal of This Action........ 2

1. Application of the Colorado River Doctrine Is Not Warranted........ 2

2. Defendants Have Not Met the *Colorado River* Standard. ........ 3

a. Second Factor: The Inconvenience of the Federal Forum ........ 3

b. Third Factor: Desire to Avoid Piecemeal Litigation. ........ 4

c. Fourth Factor: Order of Jurisdiction........ 5

d. Fifth Factor: Federal Rule of Decision........ 5

e. Sixth Factor: Adequacy of State Court Action to Protect Rights of the Federal Litigants........ 5

f. Seventh Factor: Avoiding Forum Shopping. ........ 6

g. Eight Factor: Whether State Court Proceedings Will Resolve All Issues Before the Federal Court. ........ 7

C. Defendants Are Not Immune from Liability. ........ 11

D. Plaintiff States a Claim Under the ECPA. ........ 13

1. Plaintiff Alleges Defendants' Wrongdoing. ........ 13

2. Defendants' Unlawfully Procured the Third Parties to Violate the ECPA. ........ 14

3. Defendants Unlawfully Disclosed and Used and Endeavored to Disclose and Use Plaintiff's and Class Members' Electronic Communications. ........ 16

4. The ECPA's Crime-Tort Exception Applies. ........ 17

5. Plaintiff Alleges the Contemporaneous In-Transit Interception of the Content of His Communications.................. 18

6. Plaintiff Alleges Interception of Contents. ................................. 20

E. Plaintiff States a Claim for Invasion of Privacy Under California's Constitution. ....................................................... 22

III. CONCLUSION ........................................................................... 24

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Atkins v. Amplitude, Inc.*,
2025 WL 2521732 (N.D. Cal. Sept. 2, 2025) ........................................8, 9, 10, 11

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024)........................................................17

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024)...........................................................18, 23

*Boseovski v. McCloud Healthcare Clinic, Inc.*,
2020 WL 68578 (E.D. Cal. Jan. 7, 2020).............................................................15

*Bowen v. Energizer Holdings*,
118 F. 4th 1134 (9th Cir. 2024)..............................................................................8

*Byars v. Goodyear Tire & Rubber Co.*,
654 F. Supp. 3d 1020 (C.D. Cal. 2023)...........................................................19, 21

*Campbell v. Facebook Inc.*,
77 F.Supp.3d 836 (N.D. Cal. 2014) .......................................................................19

*Camplisson v. Adidas America, Inc.*,
2025 WL 3228949 (S.D. Cal. Nov. 18, 2025) ........................................8, 9, 10

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
511 U.S. 164 (1994) ...............................................................................................15

*Cingular Wireless, LLC v. Thurston Cnty.*,
150 F. App'x 633 (9th Cir. 2005) ..........................................................................2

*City of Whittier v. Everest Nat'l Ins. Co.,*
97 Cal. App. 5th 895 (Cal. App. Ct. 2023) ..........................................................13

*Covenant Care, Inc. v. Super. Ct.*,
32 Cal.4th 771 (Cal. 2004)......................................................................................13

*D'Angelo v. Penny OpCo, LLC*,
2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) ........................................................20

*Dawson v. The University of Phoenix*,
2026 WL 92248 (N.D. Ill. Jan. 13, 2026) ........ 15

*Doe v. Eating Recovery Ctr., LLC*,
2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) ........ 19, 20

*Doe v. Kaiser Found. Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ........ 18

*Doe v. Regents of Univ. of California*,
672 F. Supp. 3d 813 (N.D. Cal. 2023) ........ 23

*Esparza v. UAG Escondido A1 Inc.*,
2024 WL 559241 (S.D. Cal. Feb. 12, 2024) ........ 19

*Federal Deposit Ins. Corp. v. Nichols*,
885 F.2d 633 (9th Cir. 1989) ........ 6

*Frasco v. Flo Health, Inc.*,
2025 WL 1476905 (N.D. Cal. May 22, 2025) ........ 20

*Freeman v. DirecTV, Inc.*,
457 F.3d 1001 (9th Cir. 2006) ........ 16

*Gabrielli v. Haleon US Inc.*,
2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) ........ 8, 9, 10, 11

*Gaige v. Exer Holding Co., LLC*,
2025 WL 559719 (C.D. Cal. Jan. 30, 2025) ........ 17

*Gintz v. Jack In The Box, Inc.*,
2006 WL 3422222 (N.D. Cal. Nov. 28, 2006) ........ 5

*Hartley v. Urb. Outfitters, Inc.*,
740 F. Supp. 3d 410 (E.D. Pa. 2024) ........ 11

*Herzer v. Redstone*,
2018 WL 5094933 (C.D. Cal. July 10, 2018) ........ 16

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024) ........ 23

*Hughes v. Vivint, Inc.*,
2024 WL 5179916 (C.D. Cal. July 12, 2024) ........ 11

*In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130 (C.D. Cal. 2021)....23

*In re BetterHelp, Inc. Data Disclosure Cases*, 2024 WL 3416511 (N.D. Cal. July 15, 2024)....17

*In re Carrier IQ, Inc., Consumer Privacy Litig.*, 78 F. Supp. 3d 1051 (N.D. Cal. 2015)....16

*In re Easysaver Rewards Litig.*, 737 F.Supp.2d 1159 (S.D. Cal. 2010)....16

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020)....20, 22

*In re Google Inc. Gmail Litig.*, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014)....20

*In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147 (N.D. Cal. 2021)....23

*In re iPhone Application Litig.*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012)....23

*In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778 (N.D. Cal. 2022)....23

*In re Toys R Us, Inc. Priv. Litig.,* 2001 WL 34517252 (N.D. Cal. Oct. 9, 2001)....16

*In re Yahoo Mail Litig.*, 7 F.Supp.3d 1016 (N.D. Cal. 2014)....19

*In re Zynga Priv. Litig.,* 750 F.3d 1098 (9th Cir. 2014)....21

*Jacqueline T. v. Alameda Cnty. Child Prot. Serv.*, 155 Cal. App. 4th 456 (2007)....12

*Jodar v. Staples, Inc.*, 2006 WL 8455425 (S.D. Cal. Feb. 24, 2006)....4

*Katz-Lacabe v. Oracle Am., Inc.*, 668 F.Supp.3d 928 (N.D. Cal. 2023)....18

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025) .......... 11

*Kirch v. Embarq Mgmt. Co.*,
702 F.3d 1245 (10th Cir. 2012) .......... 14, 15

*Kishnani v. Royal Caribbean Cruises Ltd.*,
2025 WL 1745726 (N.D. Cal. June 24, 2025) .......... 11

*Kurowski v. Rush Sys. for Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023) .......... 24

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) .......... 18

*Lee v. Sec. Life of Denver Ins. Co.*,
2025 WL 2964013 (C.D. Cal. Sept. 22, 2025) .......... 11

*Lonegan v. Hasty*,
436 F. Supp. 2d 419 (E.D.N.Y. 2006) .......... 15

*Lopez v. S. Cal. Rapid Transit Dist.*,
40 Cal. 3d 780 (1985) .......... 12

*Low v. Linkedin Corp.*,
900 F.Supp.2d 1010 (N.D. Cal. 2012) .......... 23

*Matera v. Google Inc.*,
2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) .......... 15

*Mendocino Ry. v. Ainsworth*,
113 F.4th 1181 (9th Cir. 2024) .......... 5

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) .......... 11

*Montanore Mins. Corp. v. Bakie*,
867 F.3d 1160 (9th Cir. 2017) .......... 6

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) .......... 3, 4

*Murphy v. Viad Corp.*,
2022 WL 3137720 (C.D. Cal. May 13, 2022) .......... 7

*N. Am. Co. for Life & Health Ins. v. Philpot*,
2009 WL 10672498 (S.D. Cal. Feb. 17, 2009) ........ 17

*Nienaber v. Overlake Hosp. Med. Ctr.*,
2025 WL 692097 (W.D. Wash. Mar. 4, 2025) ........ 23

*Ojeda v. Kaiser Permanente Int'l., Inc.*,
2022 WL 18228249 (C.D. Cal. Nov. 29, 2022) ........ 23

*Opperman v. Path, Inc.*,
205 F. Supp. 3d 1064 (N.D. Cal. 2016) ........ 24

*Peavy v. WFAA-TV, Inc.*,
221 F.3d 158 (5th Cir. 2000) ........ 14, 16

*Pena v. GameStop, Inc.*,
670 F. Supp. 3d 1112 (S.D. Cal. 2023) ........ 18

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ........ 8

*Q.J. v. PowerSchool Holdings, LLC*,
2025 WL 2410472 (N.D. Ill. Aug. 20, 2025) ........ 15

*R.C. v. Sussex Publishers, LLC*,
2025 WL 948060 (N.D. Cal. Mar. 28, 2025) ........ 8

*R.C. v. Walgreen Co.*,
733 F.Supp.3d 876 (C.D. Cal. 2024) ........ 17

*R.S. v. Prime Healthcare Servs.*,
2025 WL 103488 (C.D. Cal. Jan. 13, 2025) ........ 17

*Rodriguez v. Culligan Int'l Co.*,
2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) ........ 11

*Saeedy v. Microsoft Corp.*,
2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) ........ 23

*Saltares v. Kristovic*,
6 Cal.App.3d 504 (1970) ........ 13

*San Mateo Union High Sch. Dist. v. Cnty. of San Mateo*,
213 Cal.App.4th 418 (2013) ........ 13

*Seneca Ins. Co. v. Strange Land, Inc.*,
862 F.3d 835 (9th Cir. 2017) .......... 3

*Shah v. Capital One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) .......... 19

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) .......... 20

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 8

*St. Aubin v. Carbon Health Tech., Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) .......... 20, 21, 23

*Stubborn Mule LLC v. Grey Ghost Precision, LLC*,
2023 WL 129789 (D. Idaho Jan. 9, 2023) .......... 4

*Torres v. Prudential Financial*,
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) .......... 19, 20

*Total Baking Sols., LLC v. ASAP Eng'g, Inc.*,
2010 WL 11570091 (D. Mont. Feb. 23, 2010) .......... 6

*Travelers Indem. Co. v. Madonna*,
914 F.2d 1364 (9th Cir. 1990) .......... 3, 4, 5

*Uriarte v. Bostic*,
2017 WL 2312084 (S.D. Cal. May 26, 2017) .......... 12

*Valentine v. Wideopen West Finance, LLC*,
288 F.R.D. 407 (N.D. Ill. 2012) .......... 15

*Walker v. Fred Meyer, Inc.*,
953 F.3d 1082 (9th Cir. 2020) .......... 11

*Weston v. Lefiti*,
2023 WL 8458249 (S.D. Cal. Dec. 5, 2023) .......... 15

*Williams v. TMC Health*,
2024 WL 4364150 (D. Ariz. Sept. 30, 2024) .......... 23

*Zarif v. Hwareh.com, Inc.*,
789 F. Supp. 3d 880 (S.D. Cal. 2025) .......... 18

**STATUTES**

18 U.S.C. § 2510 ........ 20

18 U.S.C. § 2511 ........ 1, 14, 16, 17

18 U.S.C. § 2520 ........ 14

Cal. Gov. Code § 820.2 ........ 2, 4, 11

# I. INTRODUCTION

Plaintiff John Doe alleges that Defendants Jeff Engel, Erin Lavigna, Timothy Ciraolo, Lauren Hedgpeth, Sean Hlavac, Sandra Philips, Jennifer Lawrence, Kim Kennedy, Hallie Johnson, and Hallie Jacobs (collectively, "Defendants") – as employees of a major healthcare provider, the University of California, San Diego Health ("UCSD Health") – were responsible for: (a) implementing, embedding and installing analytics and tracking tools ("Tracking Code") on the UCSD Health website and patient portal, among other online platforms (the "Website"); and (b) procuring third parties, such as Meta Platforms, Inc. ("Meta"); Google LLC ("Google"); and Fullstory, Inc. ("Fullstory") (collectively, the "Third Parties"), to intercept the sensitive and confidential communications of Plaintiff and Class members via the Website without their consent. *See* ECF No. 1 (Complaint or "Compl.") ¶¶ 1-5. Based on Defendants' conduct, he alleges: (a) violations of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511, *et seq.*; and (b) invasion of privacy under California's constitution. *See generally* Compl.

In their motion to dismiss, Defendants argue that because another case is pending in state court – namely, *Porter v. The Regents of the University of Californi*a, No. 37-2023-00011636-CU-NP-CTL (San Diego Super. Ct.) (the "*Porter*" case) – the Court should stay or dismiss this action per the *Colorado River* doctrine. ECF No. 15 (Motion to Dismiss or "MTD") at 5-9. However, the plaintiffs in *Porter* have moved to dismiss that case. As such, the *Colorado River* doctrine is inapplicable. In all events, *Porter* involves distinct claims and defendants, so a stay or dismissal is not supported.

Defendants also contend Plaintiff fails to allege a concrete injury sufficient for Article III standing. *Id.* at 9-12. However, Plaintiff alleges the surreptitious interception of his medically-related and confidential communications, which is sufficient to allege a concrete injury.

Defendants also seek dismissal arguing that as government employees, they have discretionary immunity under California Government Code ("Cal. Gov. Code") § 820.2. MTD at 12-13. As threshold matter, it is premature to decide that fact-based issue. Further, Plaintiff's allegations do not establish Defendants' immunity.

Finally, ignoring some of Plaintiff's allegations and mischaracterizing others, Defendants seek dismissal of Plaintiff's ECPA and invasion of privacy claims. When Plaintiff's actual allegations and the reasonable inferences therefrom are considered, Plaintiff has sufficiently alleged his ECPA and invasion of privacy claims. Accordingly, the Court should deny Defendants' Motion to Dismiss in its entirety.

## II. ARGUMENT

### A. The *Colorado River* Doctrine Does Not Warrant a Stay or Dismissal of This Action.

#### 1. <u>Application of the Colorado River Doctrine Is Not Warranted.</u>

Defendants argue that the Court should "apply the *Colorado River* Doctrine and dismiss or stay the instant action pending a final judgement in the *Porter* Action." MTD at 2. Because this case brings different causes of actions against different Defendants than the *Porter* case, application of *Colorado River* is inappropriate. Regardless, Plaintiff's counsel informed Defendants' counsel that the *Porter* plaintiffs planned to dismiss their claims and the *Porter* plaintiffs have filed their motion to dismiss, which will be heard on September 4, 2026. *See* Declaration of Philip L. Fraietta (Fraietta Decl.) ¶¶ 4-5. Under California's state court procedures, such dismissal must be effectuated by motion, which Plaintiff's counsel understands will likely be heard later in the year. But once the San Diego Superior Court dismisses the action, there will be no "concurrent or pending state court proceeding" to warrant application of *Colorado River*. *Cingular Wireless, LLC v. Thurston Cnty.*, 150 F. App'x 633, 634 (9th Cir. 2005).

Nonetheless, even if the Court believes it is appropriate to apply *Colorado River* while the *Porter* case is pending dismissal, the Court should find that *Colorado River* does not merit stay or dismissal of the present action.

**2. <u>Defendants Have Not Met the *Colorado River* Standard.</u>**

The Court's task in assessing the use of the *Colorado River* doctrine is "to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 (1983). Further, "[a]ny doubt as to whether a factor exists should be resolved against a stay, not in favor of one." *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990). Defendants have not shown exceptional circumstances exist to merit stay or dismissal of the case under *Colorado River*. The following factors are to be considered on balance:

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

*Seneca Ins. Co. v. Strange Land, Inc.*, 862 F.3d 835, 841–42 (9th Cir. 2017).[1]

*a. <u>Second Factor: The Inconvenience of the Federal Forum.</u>*

Defendants argue that because Plaintiff is "domiciled in San Diego, California [], the same place where the nearly identical *Porter* Action is pending[,]" the federal action will inconvenience Defendants because they "may also become custodians in the *Porter* case . . . . require[ing] duplicative efforts and litigation spend." MTD at 6. Defendants misapply the second factor, which relates to the inconvenience in litigating the action in this Court, not "duplicative efforts and litigation spend" of

[1] The first factor is inapplicable since no real property is at issue. Defendants also do not raise this factor. MTD at 6, n. 4.

litigating the present action. *Id.* at 6. In other words, Defendants offer no basis to conclude the second factor favors a stay or dismissal.

Regardless, the second factor "carries no weight in this instance" since both actions are "proceeding in Southern California" and Defendants are residents of San Diego, California. *See Jodar v. Staples, Inc.*, 2006 WL 8455425, at *4 (S.D. Cal. Feb. 24, 2006); Compl. ¶ 8; MTD at 6 (not contesting Defendants are residents of San Diego, CA). Thus, "hearing the case in this Court would not be greatly inconvenient for [Defendants]." *Stubborn Mule LLC v. Grey Ghost Precision, LLC*, 2023 WL 129789, at *5 (D. Idaho Jan. 9, 2023).

*b. <u>Third Factor: Desire to Avoid Piecemeal Litigation.</u>*

Defendants argue the third factor weighs in their favor because "the *Porter* Action previously denied the plaintiffs' motion for leave to amend to add the same individual defendants . . . . [t]hus, by bringing this action, Plaintiff is blatantly circumventing the State Court's order . . . . which would result in piecemeal litigation." MTD at 7. Defendants' argument ignores the San Diego Superior Court's ***reason*** for denying addition of the individual defendants.

The *Porter* court denied the motion to amend to add the individual defendants "***without prejudice***" because the proposed amended complaint did "not properly substitute the Doe Defendants under C.C.P. § 474." ECF No. 15-2, Exhibit A ("Order") at 4. (emphasis added). The court did not address the arguments Defendants repeat here: whether Defendants are immune from liability under Cal. Gov. Code § 820.2 (MTD at 12-13). Instead, the ruling focused **only** on the failure to adhere to C.C.P. § 474. Order at 4. Thus, the Court's adjudication here would not result in piecemeal litigation because the *Porter* court did not decide any issues as to Defendants.

In *Travelers Indemnity Company v. Madonna*, the Ninth Circuit found that because at the time the district court stayed the federal action, "the state court had made no rulings whatsoever in regard to th[e] dispute, there [was] no certainty that

duplicative effort would result." 914 F.2d 1364 at 1369. Since the Ninth Circuit found that even the ***possibility*** of a duplicative effort was insufficient to justify a stay, this factor does not support a stay or dismissal, here, where it is ***guaranteed*** that the *Porter* court will not rule on the merits as to Defendants.

*c. Fourth Factor: Order of Jurisdiction.*

Plaintiff does not contest that the *Porter* action was filed first and has progressed further. But because the *Porter* plaintiffs are in the process of dismissing the action, this factor does not favor staying or dismissing this case. Particularly, this factor is related to avoiding piecemeal litigation. *See Gintz v. Jack In The Box, Inc.*, 2006 WL 3422222, at *5 (N.D. Cal. Nov. 28, 2006) ("the court must consider how much progress has been made in the two actions when weighing the desirability of avoiding piecemeal litigation") (cleaned up). As described above, there is no risk of piecemeal litigation. *See* Section II.A.2.b.

*d. Fifth Factor: Federal Rule of Decision.*

Plaintiff does not contest "California state and federal courts have concurrent jurisdiction over a Wiretap Act claim." MTD at 8. But the ECPA, is "governed by federal statute[,]" thus, this factor "weighs against dismissal[.]" *Mendocino Ry. v. Ainsworth*, 113 F.4th 1181, 1190 (9th Cir. 2024).[2]

*e. Sixth Factor: Adequacy of State Court Action to Protect Rights of the Federal Litigants.*

Defendants argue "that the State Court had authority to hear and resolve the two claims at issue" given the overlap in facts, causes of action, and class definitions. MTD at 8, 9.[3]

[2] Responding to Defendants' argument that "the alleged facts underlying both claims are the same here" (MTD at 8), Plaintiff notes that whether the underlying facts of this case are the same as the *Porter* action is irrelevant to this factor.

[3] Defendants do not provide reasoning for its assertion but cite "*See* infra at 9." Thus, Plaintiff presumes Defendants were referencing their statement "given the overlap and congruence in alleged facts, causes of action, and class definitions."

"This factor concerns 'whether the state court might be unable to enforce federal rights.'" *Montanore Mins. Corp. v. Bakie*, 867 F.3d 1160, 1169 (9th Cir. 2017). While the *Porter* court has the authority to adjudicate the claims here, "[t]his factor is more important when it weighs against a stay." *Id.* (cleaned up). Thus, it offers little weight towards a stay or dismissal.

Further, Defendants' rely on irrelevant arguments. Defendants state that the *Porter* court "**had** authority to hear" the claims at issue. MTD at 8 (emphasis added). But the *Porter* court did **not** address the claims at issue here. Order at 4. Further, Defendants' argument about overlap in facts, causes of action, and class definitions (MTD at 8, 9) is irrelevant to whether the state court can "address the rights and remedies at issue," *Montanore*, 867 F.3d at 1169 (cleaned up).

*f. Seventh Factor: Avoiding Forum Shopping.*

Defendants argue Plaintiff engaged in forum shopping because he filed this lawsuit against "the individual Defendants" "to obtain a more favorable ruling." MTD at 8-9. This argument fails because the *Porter* court never addressed an ECPA claim, nor did it address **Defendants' liability** for any claims. *Supra* Section II.A.2.b. Thus, by filing the present action, Plaintiff is not gaining a "more favorable ruling" on an **ECPA** claim against **Defendants**.

Even if the Court agrees with Defendants, "federal courts may not decline to exercise jurisdiction solely on the basis of forum shopping." *Total Baking Sols., LLC v. ASAP Eng'g, Inc.*, 2010 WL 11570091, at *5 (D. Mont. Feb. 23, 2010) (citing *Federal Deposit Ins. Corp. v. Nichols*, 885 F.2d 633, 638 (9th Cir. 1989)). Moreover, because the *Porter* action will be dismissed, the Ninth Circuit's ruling in *Federal Deposit Ins. Corp. v. Nichols*, 885 F.2d at 638 is instructive – finding the district court abused its discretion when "declin[ing] jurisdiction" because the state court was "dismissed without prejudice" when the federal action was filed. *Id.* Although the timing between the state court dismissal here differs from *Federal Deposits*, the outcome will be the same – a dismissed state action.

*g. Eight Factor: Whether State Court Proceedings Will Resolve All Issues Before the Federal Court.*

Defendants argue that "this action is merely a 'spin-off' from the *Porter* Action, given the overlap and congruence in alleged facts, causes of action, and class definitions." MTD at 9. But even if overlap exists, that is insufficient to find that *Porter* will resolve all the issues here.

"A *Colorado River* stay should be implemented only when the state proceeding will resolve all of the parties' claims" thus, "there is a strong presumption that the presence of an additional claim in the federal suit means that *Colorado River* is inapplicable." *Murphy v. Viad Corp.*, 2022 WL 3137720, at *6 (C.D. Cal. May 13, 2022) (cleaned up). The *Murphy v. Viad Corp.* court reasoned that although some claims overlapped between the actions, since the plaintiff brought additional claims in the federal action, "dismissing or staying th[e] case under *Colorado River* would not be appropriate because the Illinois Action would not resolve all of Plaintiff's claims against Defendant." *Id.*

The same is true here. This action involves a distinct claim (ECPA) against distinct defendants, meaning the state court action, even if it were going to proceed, would not resolve all the claims in this action. Thus, there is a "strong presumption . . . . that *Colorado River* is inapplicable." *See id.*

When weighing all factors, the Court should find they do not support staying or dismissing the present action under *Colorado River*.

**B. Plaintiff Has Alleged a Concrete Injury Sufficient for Article III Standing.**

This case involves the interception of Plaintiff's health-related communications, which are communications of the most sensitive nature. Yet, Defendants argue Plaintiff's Complaint "fails to establish Article III standing" because "Plaintiff does not allege that his sensitive medical information … or any

communication between a Plaintiff and any Defendant was captured or disclosed by any code on the [] Website." MTD at 9-11. Defendants' argument fails.[4]

Plaintiff must allege they suffered a "'concrete' injury sufficient to support Article III standing." *Popa v. Microsoft Corp.*, 153 F.4th 784, 788 (9th Cir. 2025). For intangible harms, courts will consider "both history and the judgment of Congress[.]" *Id.* at 789 (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)). "[V]iolations of the right to privacy have long been actionable at common law." *Camplisson v. Adidas America, Inc.*, 2025 WL 3228949, at *6 (S.D. Cal. Nov. 18, 2025) (cleaned up). "[T]his right encompass[es] the individual's control" of their information. *Id.* (cleaned up). Courts consider whether alleged injuries bear a "close relationship to harms traditionally recognized" for actions in American courts, like "intrusion upon seclusion[.]" *Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, at *5 (N.D. Cal. Aug. 29, 2025) (cleaned up). However, "an exact duplicate is not required[.]" *Popa*, 153 F.4th at 791.

*Atkins v. Amplitude, Inc.*, 2025 WL 2521732, at *1 (N.D. Cal. Sept. 2, 2025) is instructive. *Atkins* involved the interception of user data on the DoorDash food delivery platform. *Id.* at *1. The court found the plaintiffs alleged a concrete injury by alleging their "geolocation information, device IDs, device fingerprint data … search terms input to the app, . . . . was collected and disseminated[,]" which "may reveal, for instance, a consumer's … medical condition." *Id.* (cleaned up). The court reasoned: "[d]isclosure of facts that allegedly reveal this highly sensitive information

---

[4] As a preliminary matter, "[c]ourts regularly refuse to decide at the pleading stage whether information like that which Gabrielli identifies meets the bar for 'personal or sensitive' … this argument is intertwined with the merits, and courts cannot resolve 'jurisdictional questions [that] are intertwined with the merits of a claim.'" *Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, at *6, n.5 (N.D. Cal. Aug. 29, 2025) (citing *Bowen v. Energizer Holdings*, 118 F. 4th 1134 (9th Cir. 2024)); *see also R.C. v. Sussex Publishers, LLC*, 2025 WL 948060, at *4 (N.D. Cal. Mar. 28, 2025) (cleaned up) (finding that when "[r]esolution of the standing issue is intertwined with an element of the merits of plaintiff[s'] claim" it is thus a question of fact inappropriate for resolution at this juncture).

is sufficient to allege a concrete privacy harm analogous to those actionable under common law privacy torts." *Id.*

*Camplisson v. Adidas America, Inc.*, 2025 WL 3228949, at *6, is also instructive. There, the plaintiffs alleged that the defendant used trackers on its apparel website to collect their data including, "the user's operating system, the type of website or email used, the time when the website was accessed, the user's IP address, and whether there are cookies that previously have been set by the server hosting the pixel image." *Id.* at *1 (cleaned up). The court found that the plaintiffs' allegations that the defendant collected "a broad set of their personal identifying and addressing information without [the plaintiffs'] consent" maintained "a violation of privacy, particularly in the control of their own information" and thus, the injury was "in accordance with traditional privacy harms and [was] concrete." *Id*. at *6.

*Gabrielli v. Haleon US Inc*., 2025 WL 2494368, at *2, *6, involved health-related, but non-prescription retail products (like vitamins, antacids, and toothpaste) websites, and the plaintiff alleged that the defendant allowed third parties to collect "user input data," including "[t]he information the user entered into the Websites' form fields, including search queries, the user's name, age, gender, email address, location, and/or payment information, demographic information," and metadata. *Id*. at *7 (cleaned up). The court found that the plaintiff's allegations that the defendant "deprived him control of personal information regarding his digital activity and profile [were] enough to show a concrete injury to his right to privacy[.]" *Id*. at *6.

Here, Plaintiff alleges a concrete harm sufficient for Article III standing by alleging he "routinely accesses the Website" to "schedule medical appointments, obtain medications, obtain test results, research specialty doctors, and schedule imaging[,]" including, using "the Website to search for a neurologist to treat his concussion," (Compl. ¶ 90), and further alleging that "Defendants' integration, installation and embedding of the Tracking Code on the Website . . . . allowed Plaintiff's Private Information (including, but not limited to, communications about

his neurologist search) to be intercepted by, and otherwise disclosed to, unauthorized [Third Parties], without Plaintiff's knowledge or consent" along with his PII, (*id.* ¶¶ 51, 56, 72, 75, 82) (cleaned up).

Like the plaintiffs in *Atkinson*, Plaintiff alleges interception of his medical-related communications, which reveal "highly sensitive information [] sufficient to allege a concrete privacy harm analogous to those actionable under common law privacy torts[.]" *See id.*; *Atkins*, 2025 WL 2521732, at *1. Further, like *Camplisson* and *Gabrielli*, Plaintiff alleges Defendants deprived him of control over his information because the interceptions of his medical-related communications occurred "without Plaintiff's knowledge or consent[.]" *See* Compl. ¶ 51; *Camplisson*, 2025 WL 3228949, at *6; *Gabrielli*, 2025 WL 2494368, at *6. Further, Plaintiff's communications are more sensitive than the data at issue in *Atkins*, *Camplisson*, and *Gabrielli*. *See* Compl. ¶¶ 51, 56, 72, 75, 82, 90; *Atkins*, 2025 WL 2521732, at *1 (finding that even a ***possibility*** of revealing a medical condition sufficed), *Camplisson*, 2025 WL 3228949, at *6 (involving user interaction data on a ***clothing*** website); *Gabrielli*, 2025 WL 2494368, at *6 (involving over-the-counter products like vitamins, antacids, and toothpaste). Thus, Plaintiff's allegations also pass muster and are sufficient for Article III standing. *Id.*

Defendants argue that Plaintiff's harm is not concrete because he "does not allege that his sensitive medical information" was intercepted by code on the Website. MTD at 11. This is false. Plaintiff alleges: "Defendants' integration, installation and embedding of the Tracking Code on the Website . . . . allowed Plaintiff's Private Information (including, but not limited to, communications about his neurologist search) to be intercepted by . . . . [Third Parties], without Plaintiff's knowledge or consent." Compl. ¶ 92. Additionally, Defendants' argument that Plaintiff does not identify "information so sensitive that its disclosure would be highly offensive[,]" MTD at 11, fails because data revealing medical-related information is considered sensitive, and an interception of such is a highly offensive

intrusion. *See Atkins*, 2025 WL 2521732, at *1; *Gabrielli*, 2025 WL 2494368, at *6. Moreover, Defendants cite *Rodriguez v. Culligan Int'l Co.*, 2025 WL 3064113 at *3 (S.D. Cal. Nov. 3, 2025), but it is distinguishable because it involved no allegations of sensitive information being intercepted.

Lastly, Defendants argue "Plaintiff relies upon broad, generic allegations about [the Third Parties' Tracking Code], including how these technologies allegedly function and what data they might be able to collect" but "speculation cannot establish concrete injury because it does not show what, if anything, was actually collected from Plaintiff[.]" MTD at 11. However, Plaintiff's allegations must be taken as true, *see Walker v. Fred Meyer, Inc.*, 953 F.3d 1082, 1086 (9th Cir. 2020), and "Plaintiff is not required to prove his claims at this stage[,]" *Lee v. Sec. Life of Denver Ins. Co.*, 2025 WL 2964013, at *3 (C.D. Cal. Sept. 22, 2025). Thus, Plaintiff's explanatory allegations on how the Tracking Code works and that those explanations "describe[] the way in which the [Tracking Code] operates and intercepts patient communications on the Website" suffice and go beyond speculation. *See* Compl. ¶¶ 25, 32-67.

Defendants' authorities are distinguishable. Plaintiff does not hypothetically plead what *could* be intercepted nor that non-sensitive communications or mere IP addresses were intercepted. *See* Compl. ¶¶ 25, 90, 92. *Cf. Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *4–5 (N.D. Cal. June 24, 2025); *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1179 (N.D. Cal. 2025); *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023); *Hartley v. Urb. Outfitters, Inc.*, 740 F. Supp. 3d 410, 422 (E.D. Pa. 2024); *Hughes v. Vivint, Inc.*, 2024 WL 5179916, at *4 (C.D. Cal. July 12, 2024). Thus, the Court should find Plaintiff has alleged a concrete injury.

**C. Defendants Are Not Immune from Liability.**

Defendants argue that they are immune from liability under California Government Code (Cal. Gov. Code) § 820.2 because their "alleged decision to use

analytics on UCSD Health's website was a basic policy decision." MTD at 13. Defendants are wrong and make this argument only by drawing unsupported inferences from the pleadings.

As a preliminary matter, the analysis of whether acts are "the result of the *exercise* of the discretion vested in a public employee" would require Defendants to prove that "in deciding to perform . . . . the act which led to plaintiff's injury, [they] *consciously exercised discretion* in the sense of assuming certain risks in order to gain other policy objectives." *Lopez v. S. Cal. Rapid Transit Dist.,* 40 Cal.3d 780, 794 (1985) (cleaned up). And this showing cannot be made at the pleading stage, and thus, would be "an error to sustain [the motion to dismiss]." *Id.* But even when assessing discretionary immunity, Defendants' argument falls short.

In conducting the fact-based analysis into whether acts are discretionary, courts look at whether the acts involve "basic policy decisions" (*Lopez*, 40 Cal.3d at 793) which do not reach "'lower level decisions that merely implement a basic policy already formulated'" (*Jacqueline T. v. Alameda Cnty. Child Prot. Serv*. 155 Cal. App. 4th 456, 465 (2007)). Hence, discretionary immunity does not apply to subsequent ministerial actions made in furtherance of a basic policy decision. *Lopez*, 40 Cal.3d at 793. "The party asserting immunity must actually 'make a showing that such a [basic] policy decision, consciously balancing risks and advantages, took place.'" *Uriarte v. Bostic*, 2017 WL 2312084 at *9 (S.D. Cal. May 26, 2017). Exercising some discretion does not convert those actions to discretionary actions since "any act, no matter how ministerial, involves some degree of 'discretion[.]'" *Lopez*, 40 Cal.3d at 793 (cleaned up).

Defendants fail to show they made basic policy decisions. Plaintiff's allegations do not set forth that Defendants made basic policy decisions regarding the Tracking Code. *See* Compl. ¶¶ 2, 11-20, 106 Rather, Plaintiff alleges that each Defendant implemented the Tracking Code on the Website, "[a]t UCSD Health's direction[.]" *Id*. ¶¶ 11-20, 106. Plaintiff's allegations say nothing as to who

developed the policy underlying the decision to use Tracking Code or what the policy even was. Likely, any such policy decision would have been made by UCSD Health, leaving Defendants to take the ministerial steps to implement.

The cases Defendants rely on are distinguishable or inapposite. *San Mateo Union High Sch. Dist. v. Cnty. of San Mateo*, 213 Cal.App.4th 418, 537, 543-44 (2013), involved a county treasurer who had the discretion to make crucial investment policy decisions that assessed the risks and advantages of competing investment opportunities" and therefore, the defendants' actions were basic policy decisions. Similarly, the defendant in *Saltares v. Kristovic*, 6 Cal.App.3d 504, 513, 515-16, 519 (1970), was "an officer of the county" with the vested discretion to determine whether to pay a property debt. Unlike these cases, Plaintiff's allegations do not show Defendants had policy making roles nor had the discretion to determine whether/when to use the Tracking Code.

**D. Plaintiff States a Claim Under the ECPA.**

**1. <u>Plaintiff Alleges Defendants' Wrongdoing.</u>**

Ignoring Plaintiff's allegations and the reasonable inferences therefrom, Defendants argue dismissal of Plaintiff's ECPA claim is proper because "[t]here are no facts showing any wrongdoing by any individual Defendant[.]" MTD at 14. In actuality, the Complaint is replete with allegations regarding Defendants' actual conduct that subjects them to ECPA liability. *See* Compl. ¶¶ 3, 11-20, 25, 56, 68, 72, 83, 86, 92-94, 96, 106, 127-32, 139. As such, Defendants' argument fails.

The state cases cited by Defendants do not involve federal or state wiretapping claims and, thus, it is not clear why Defendants have cited them. *See* MTD at 14 (citing *City of Whittier v. Everest Nat'l Ins. Co.,* 97 Cal. App. 5th 895 (Cal. App. Ct. 2023); *Covenant Care, Inc. v. Super. Ct.*, 32 Cal.4th 771 (Cal. 2004)). In all events, even if those cases stood for the propositions concocted by Defendants, they would have no bearing on this case, in light of Plaintiff's actual allegations.

### 2. **Defendants' Unlawfully Procured the Third Parties to Violate the ECPA.**

Contrary to Defendants' contention (MTD at 20-21), Defendants violated the ECPA by unlawfully procuring the Third Parties to intercept Plaintiff's and Class members' electronic communications. The ECPA provides for liability against anyone who "intentionally intercepts, endeavors to intercept, or *procures another person to intercept or endeavor to intercept* any . . . electronic communication." 18 U.S.C. § 2511(1)(a) (emphasis added). The ECPA further provides that a person whose "electronic communication is intercepted, disclosed, or intentionally used" in violation of the ECPA may bring a civil action against the entity that engaged in the violation. *See* 18 U.S.C. § 2520.

Here, Plaintiff alleges "Defendants procured the Third Parties to intercept Plaintiff's and Class members' electronic communications" in violation of the ECPA. Compl. ¶ 127; *see also id.* ¶ 126. The communications at issue involved Plaintiff's and class members' personally identifiable information ("PII"), protected health information ("PHI"), medical treatment, medications and scheduling. *Id.* ¶ 128. Plaintiff's allegations are sufficient to state an ECPA violation.

Defendants argue that "Section 2520(a)'s plain, unambiguous language creates a private civil cause of action only against the person who engages in an unlawful interception, . . . . not against any other person for procuring, enabling, aiding or abetting another's interception of such." MTD at 21. Not so.

While some courts have stated that the ECPA does not provide for civil liability against an entity that procures another to intercept communications, *see, e.g.*, *Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 169 (5th Cir. 2000); *Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1246-47 (10th Cir. 2012), courts that have more-closely examined the ECPA and its legislative history have held that the ECPA does, in fact, provide for such civil liability. *See Doe 1 v. Scripps Health* ("*Scripps*"), Case No. 3:23-cv-02215-AGS-DEB (S.D. Cal.) (Schopler, J.), ECF No. 43 (Oral Mot. to

Dismiss Ruling) (attached as Exhibit A to Fraietta, Decl.); *Boseovski v. McCloud Healthcare Clinic, Inc.*, 2020 WL 68578, at *6 (E.D. Cal. Jan. 7, 2020); *Lonegan v. Hasty*, 436 F. Supp. 2d 419, 427-28 (E.D.N.Y. 2006); *Valentine v. Wideopen West Finance, LLC*, 288 F.R.D. 407, 412 n.3 (N.D. Ill. 2012); *Dawson v. The University of Phoenix*, 2026 WL 92248, at *13-14 (N.D. Ill. Jan. 13, 2026); *Q.J. v. PowerSchool Holdings, LLC*, 2025 WL 2410472, at *6 (N.D. Ill. Aug. 20, 2025).

In *Scripps*, the court held that the ECPA provides for procurement liability and denied the defendant's argument that no such liability exists. Ex. A at 12:16-16:9. In connection with that holding, the court engaged in a lengthy analysis of the argument Defendants make here – namely, that "there can be no civil liability for allegedly procuring or aiding and abetting an alleged interception – and rejected it. Ex. A at 12:16-16:9. The court concluded that, under the ECPA, "both the person who actually intercepted" and the person who "procured the interception" may face civil liability. *Id.* at 15:7-11.

Furthermore, Defendants' cases are distinguishable, inapposite, and/or wrongly decided. *Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1246–47 (10th Cir. 2012) "'stands only for the narrow proposition that interceptions incidental to the provision of the alleged interceptor's internet service fall within the 'ordinary course of business' exception.'" *Matera v. Google Inc.*, 2016 WL 8200619, at *10 (N.D. Cal. Aug. 12, 2016) (emphasis added) (cleaned up). Defendants do not argue that the ordinary course of business exception applies here. *Weston v. Lefiti*, 2023 WL 8458249, at *3 (S.D. Cal. Dec. 5, 2023), *aff'd*, 2024 WL 4579237 (9th Cir. Oct. 25, 2024), do not discuss procurement at all, but only "interception, disclos[ure], or us[e]," and the plaintiff's secondary liability theory was that defendants *conspired* with the interceptor and disclosed the communication. The court in *Weston* cited *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 182 (1994), for the unremarkable principle that "Congress has not enacted a general civil aiding and

abetting statute" and does not address the ECPA at all. The Court in *Herzer v. Redstone*, 2018 WL 5094933, at *7 (C.D. Cal. July 10, 2018), wrongly held that the "ECPA does not recognize secondary liability" based upon the Ninth Circuit's opinion in *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1006 (9th Cir. 2006). But *Freeman* did not concern § 2511(1)(a) of the ECPA.[5] Furthermore, the court in *In re Easysaver Rewards Litig.*, 737 F.Supp.2d 1159, 1183-84 (S.D. Cal. 2010), merely held the defendant did not "intercept" the communication as the intended recipient. Relying on *Peavy v. WFAA-TV, Inc.*, the court in *In re Toys R Us, Inc., Priv. Litig.*, 2001 WL 34517252, at *7 (N.D. Cal. Oct. 9, 2001), was wrongly decided, and is distinguishable because the plaintiffs did not allege that the defendant procured an interceptor. *See also In re Carrier IQ, Inc., Consumer Privacy Litig.*, 78 F. Supp. 3d 1051, 1088-89 (N.D. Cal. 2015) (suffering from the same defect).

### 3. Defendants Unlawfully Disclosed and Used and Endeavored to Disclose and Use Plaintiff's and Class Members' Electronic Communications.

Under the ECPA, it is unlawful for an entity to: (a) "intentionally disclose[], or endeavor[] to disclose, to any other person, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication" in violation of the ECPA; or (b) "intentionally use[], or endeavor[] to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication" in violation of the ECPA. 18 U.S.C. § 2511(1)(c), (d). Here, Plaintiff expressly alleges Defendant's disclosure and use of the intercepted communications knowing that the communications were obtained in violation of the

[5] The court's statement in *Freeman* that "[t]here is no explicit provision in §§ 2702 and 2707 *or anywhere else in the ECPA*, providing for secondary liability" (emphasis added) is *dicta*. The Court did not analyze § 2511(a), let alone the entirety of the ECPA.

ECPA. *See* Compl. ¶¶ 129-30; *see also id.* ¶ 83 (Plaintiff and Class members did not consent), ¶ 84 (surreptitious and secret nature of interceptions and disclosures), ¶ 132 (intercepted communications used to "increase profit margins"). Viewed in the proper light, Plaintiff's allegations and the reasonable inferences therefrom show Defendants: (a) knew or had reason to know the communications at issue were obtained in violation of the ECPA (*i.e.*, for Defendants to obtain the information it needed to increase profit margins, Defendants had to violate the ECPA); and (b) used/disclosed and endeavored to use/disclose the contents of the intercepted communications.

Notably, Defendants do not contest that it violated the ECPA by unlawfully using and disclosing or endeavoring to use and disclose the contents of Plaintiff's and Class members' communications. As such, Defendants have waived the argument. *See N. Am. Co. for Life & Health Ins. v. Philpot*, 2009 WL 10672498, at *3 (S.D. Cal. Feb. 17, 2009).

**4. <u>The ECPA's Crime-Tort Exception Applies.</u>**

As Defendants note (MTD at 15), a party to an intercepted communication is generally not liable under the ECPA. 18 U.S.C. § 2511(2)(d). However, that exemption to liability does not apply if the "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or the laws of the United States or of any State" (the "crime-tort exception"). *Id.* The crime-tort exception applies here.

Courts within the Ninth Circuit have routinely held that the crime-tort exception applies where the plaintiff alleges "the defendant's conduct violated state law, including state law privacy claims." *R.C. v. Walgreen Co.*, 733 F.Supp.3d 876, 901 (C.D. Cal. 2024) (citing cases); *see also Gaige v. Exer Holding Co., LLC*, 2025 WL 559719, at *5, n.5 (C.D. Cal. Jan. 30, 2025); *R.S. v. Prime Healthcare Servs.*, 2025 WL 103488, at *7 (C.D. Cal. Jan. 13, 2025); *In re BetterHelp, Inc. Data Disclosure Cases*, 2024 WL 3416511, at *4 (N.D. Cal. July 15, 2024); *B.K. v. Desert*

*Care Network*, 2024 WL 1343305, at *6 (C.D. Cal. Feb. 1, 2024). Here, the crime-tort exception applies because Plaintiff alleges: (a) Defendants violated Plaintiff's right to privacy under the California Constitution and HIPAA; and (b) Defendants' "Unlawful Purpose" for engaging in that conduct. Compl. ¶¶ 103, 106, 131, 136-142. Plaintiff's allegations are sufficient at this stage. *See id.*

The cases Defendants rely on do not change this conclusion. *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1057 (N.D. Cal. 2025) (MTD at 17), is distinguishable because that case did not involve allegations involving HIPAA. Indeed, the court specifically distinguished the case before it from those involving HIPAA allegations. *See id. Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 896 (S.D. Cal. 2025) (MTD at 17), is distinguishable because the plaintiff did not "address the purpose" of the defendant's interceptions. *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024) (MTD at 16), is distinguishable because the plaintiffs did not allege that the defendant violated the ECPA for the purpose of violating the HIPAA. Rather, Plaintiff's allegations and the reasonable inferences therefrom establish that the purpose of the violations was to violate the HIPAA. *Cf. Katz-Lacabe v. Oracle Am., Inc.*, 668 F.Supp.3d 928, 945 (N.D. Cal. 2023) (cited by Defendants; purpose was to "make money" not commit torts); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065 (C.D. Cal. 2024) (similar); *Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1120 (S.D. Cal. 2023) (alleged purpose for interceptions was not illegal).[6]

**5. Plaintiff Alleges the Contemporaneous In-Transit Interception of the Content of His Communications.**

Defendants argue "Plaintiff also fails to allege contemporaneous interception of the alleged 'content' in transit. MTD at 18. Not so.

[6] The other cases cited by Defendants (MTD 17-18) are distinguishable for the same reasons.

Contrary to Defendants' argument, Plaintiff's allegations and the reasonable inferences therefrom establish that the Third Parties intercepted the communications at issue: (a) contemporaneously with their transmission to UCSD Health; (b) while the communications were in transit; and (c) ultimately read or learned the contents thereof. *See* Compl. ¶¶ 36, 38, 42 45-48, 50, 65-67, 130-31. Indeed, as Plaintiff alleges, the Third Parties analyzed the communications' contents which necessarily required those parties to read or learn their contents. *See id.* ¶¶ 38, 45, 47, 50 66. Plaintiff's allegations are sufficient to show that Defendants intercepted the communications at issue while in transit and read or learned their contents. *See Campbell v. Facebook Inc.*, 77 F.Supp.3d 836, 848 (N.D. Cal. 2014) (accepting allegations that communications occur "in transit" and explaining that consideration of evidence to the contrary would be "premature" absent a "more developed factual record."); *In re Yahoo Mail Litig.*, 7 F.Supp.3d 1016, 1028 (N.D. Cal. 2014) (refusing to "assum[e]" communications are not intercepted in transit as they would "contradict[] Plaintiffs' allegations"); *Doe v. Call-On DOC, Inc.*, 2025 WL 1677632, at *12 (S.D. Cal. June 13, 2025)[7] ("[A]llegations that [communications] are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement."); *see also Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241, at *3 (S.D. Cal. Feb. 12, 2024); *Shah v. Capital One Fin. Corp.*, 768 F. Supp. 3d 1033, 1053–54 (N.D. Cal. 2025); *Byars*, 654 F. Supp. 3d at 1027.

The cases Defendants cite in support of their contention are inapposite. Defendants' reliance on *Doe v. Eating Recovery Ctr., LLC*, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025), and *Torres v. Prudential Financial*, 2025 WL 1135088 (N.D.

---

[7] Because "[a]nalysis of CIPA violations is the same as the analysis for the federal Wiretap Act[,]" Plaintiff cites cases addressing CIPA throughout his opposition brief. *Byars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023).

Cal. Apr. 17, 2025) (MTD at 18-19), is misplaced. Unlike here, those cases were decided at the summary judgment stage.[8] *Eating Recovery Ctr.*, 2025 WL 2971090, at *1; *Torres*, 2025 WL 1135088, at *5-7; *see also In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *11 (N.D. Cal. Mar. 18, 2014) (ruling at class certification stage). At this stage, "a plaintiff is not expected to prove or even know how and when its communications were captured . . . . a pleading standard to the contrary would require the . . . plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the" defendant and third party. *D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *8 (S.D. Cal. Oct. 24, 2023).[9]

Finally, Defendants' reliance on *Smith v. Facebook, Inc.*, 262 F.Supp.3d 943 (N.D. Cal. 2017) (MTD at 19), is misplaced. In that case, the court addressed the issue of personal jurisdiction and did not analyze the in-transit requirement of the ECPA. *See id.* at 951-52.

**6. <u>Plaintiff Alleges Interception of Contents.</u>**

Defendants contend Plaintiff has not alleged "'contents' of any communications were disclosed" to the Third Parties. MTD at 21. Not so.

Under the ECPA, "content" is broadly defined to include "any information concerning the substance, purport, or meaning of [a] communication." 18 U.S.C. § 2510(8). This includes "full-string, detailed URLs" that show a particular webpage a person views, *see In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 605

---

[8] To the extent *Eating Recover Ctr.* indicates that the "in-transit" element can never be satisfied in this type of case, the case was wrongly decided – as the court openly acknowledged was a possibility. *See* 2025 WL 2971090, at *4 (ruling *without* confidence); *see also Frasco v. Flo Health, Inc.*, 2025 WL 1476905, at *1 (N.D. Cal. May 22, 2025) (denying summary judgement – factual questions regarding in-transit element); *St. Aubin v. Carbon Health Tech., Inc.*, 2024 WL 4369675, at *6 (N.D. Cal. Oct. 1, 2024).

[9] For this reason, Defendants' argument that Plaintiff relies on insufficient hypotheticals to allege interception, MTD at 19, also fails.

(9th Cir. 2020) ("*In re Facebook Tracking*"), and entering medical information on a website form. *In re Zynga Priv. Litig.* 750 F.3d 1098, 1107 (9th Cir. 2014). In *St. Aubin v. Carbon Health Techs., Inc*, at *4 (N.D. Cal. Oct. 1, 2024), the court found that "[d]escriptive URLs that reveal specific information about a user's queries reflect the 'contents' of a communication." The court distinguished these URLs from those without personal information, as was the case in *Zynga* (a case relied on by Defendants). *Id.*

Here, Plaintiff alleges Defendants procured and assisted with the interception of the contents of his communications via the Website in the form of full-string URLs containing sensitive, medical-related communications. *See* Compl. ¶¶ 68-71 (communications on the Website were intercepted in the form of full-string URLS and giving examples thereof); ¶ 87; ¶¶ 92-93 (specifying Plaintiff's communications); ¶¶ 96, 128. Plaintiff also alleges "UCSD Health acknowledged . . . . the appointment scheduling software used . . . . on the Website disclosed 'first and last name, date of birth, email address, IP address, third-party cookies, reason for visit, and insurance type[.]'" *Id.* ¶ 89. These allegations are sufficient to show that the contents of Plaintiff's and Class members' communications were intercepted. *See Byars*, 654 F. Supp. 3d at 1027 (Plaintiff need not allege "the exact contents of h[is] communications with [UCSD Health]. Rather, [Plaintiff] merely needs to show that the contents were not record information[.]").

Ignoring Plaintiff's actual allegations, Defendants assert that Plaintiff's allegations are "vague," "threadbare" and "hypothetical." MTD at 22-24. But as discussed above, Plaintiff's allegations go beyond vague, conclusory or hypothetical allegations of the contents of his communications being intercepted. *See* Compl. ¶¶ 68-71, 87, 92-93, 96, 128.

Further, contrary to Defendant's argument, Plaintiff does not "seek to blur the very bright line between online browsing information and 'medical information' . . . ." MTD at 23. As discussed above, Plaintiff alleges that his medical information was

intercepted. Indeed, it is Defendants who seek to blur the line between Plaintiff's allegations regarding the content of his communications and what courts have defined as "record information." *See id.* at 24. However, the transmission of full-string URLs and detailed form fills bears no resemblance to record information. As such, the record information cases relied on by Defendants are distinguishable. *See* MTD at 22-24.

Finally, Defendants' contention that "Plaintiff's interactions with UCSD Health's Website show only that Plaintiff used UCSD Health's publicly available Website" (MTD at 23) is wrong. Plaintiff specifically alleges that he and Class members communicated with UCSD Health via its "website and related patient portal." Compl. ¶ 2; *see also id.* ¶ 90 (describing Plaintiff's use of Defendant's online platforms to obtain medications and test results – activities that would occur within the portal). Regardless, Plaintiff's use of the public portion of the Website would still result in interception of his medically-related communications. *See id.* ¶¶ 68-71 (illustrating URLs on the public portion of the Website revealing "contents" when users search for providers).

**E. Plaintiff States a Claim for Invasion of Privacy Under California's Constitution.**

Defendants argue Plaintiff's invasion of privacy claim fails because: (1) there was not "a serious intrusion of privacy," and (2) the Third Parties, not Defendants, committed the intrusion. MTD at 24-25. Both arguments fail.

To state a claim for invasion of privacy under the California Constitution, a plaintiff must allege (1) "a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *In re Facebook Tracking*, 956 F.3d at 601.[10] However, Courts are reluctant to resolve whether an invasion is highly offensive at the pleading stage. *See*

---

[10] Defendants argue there was no "serious intrusion of privacy" which Plaintiff takes as an argument that the intrusion is not highly offensive. *See* MTD at 24-25. There is no indication that Defendants contest a reasonable expectation of privacy.

*St Aubin*, 2024 WL 4369675, at *12; *Hubbard v. Google LLC*, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024); *In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1157 (N.D. Cal. 2021). Even so, Plaintiff alleges invasion of privacy because it is well-settled that "people have a privacy interest in their 'medical history and information.'" *Ojeda v. Kaiser Permanente Int'l., Inc.*, 2022 WL 18228249, at *6 (C.D. Cal. Nov. 29, 2022). Further, medical-related communications "are readily distinguishable from" general online communications. *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 800 (N.D. Cal. 2022); *see also In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1143 (C.D. Cal. 2021); *Doe v. Regents of Univ. of California*, 672 F. Supp. 3d 813, 820 (N.D. Cal. 2023); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 799.

Plaintiff alleges interception of his medical-related communications. *See, e.g.*, Compl. ¶ 90 (communications in searching for "a neurologist to treat his concussion"); *id.* ¶¶ 5, 51, 52, 72. Based on these allegations, Defendants' invasion of privacy is highly offensive. *Id.* ¶ 142. These allegations suffice.

Moreover, Defendants' authorities involve distinguishable facts. MTD at 24-25. In *B.K. v. Eisenhower Med. Ctr.*, the plaintiffs "fail[ed] to allege any specificity as to what medical information was allegedly disclosed" (721 F. Supp. 3d at 1064), unlike Plaintiff. *See* Compl. ¶ 90. *Hubbard*, 2024 WL 3302066, at *7, involved the collection of "routine commercial behavior" data, not the collection of sensitive medical information. *Nienaber v. Overlake Hosp. Med. Ctr.,* 2025 WL 692097, at *9 (W.D. Wash. Mar. 4, 2025) and *Williams v. TMC Health*, 2024 WL 4364150, at *1, 7–8 (D. Ariz. Sept. 30, 2024) are factually inapposite because they involved an intrusion upon seclusion claim under Washington and Arizona common law, respectively. *Saeedy v. Microsoft Corp.*, 2023 WL 8828852, at *4 (W.D. Wash. Dec. 21, 2023), *Low v. Linkedin Corp.*, 900 F.Supp.2d 1010 (N.D. Cal. 2012), and *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012), all did not involve disclosure sensitive medical information, as is the case here.

Defendants also argue "there can be no intrusion of privacy here because any alleged intrusion was carried out by" the Third Parties. MTD at 25. This argument fails because they only cite a case regarding an inapplicable Illinois common law intrusion upon seclusion claim. *See* MTD at 25 (citing *Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 943–44 (N.D. Ill. 2023). Further, Defendants themselves intruded into Plaintiff's privacy by allowing interception of Plaintiff's sensitive medical communications without notice/consent. *See* Compl. ¶ 138; *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1072-73 (N.D. Cal. 2016) (finding consent only negates an intrusion upon seclusion claim if "the person alleging harm consented 'to the particular conduct'" and the "alleged tortfeasor did not exceed the scope of that consent"). Thus, because Defendants did not obtain consent, Defendants cannot avoid liability. *See id.*

## III. CONCLUSION

Based on the foregoing, the Court should deny Defendants' Motion in its entirety. To the extent the Court grants any part of Defendants' Motion, Plaintiff respectfully requests leave to file an amended complaint.

Dated: January 21, 2026

**BURSOR & FISHER, P.A.**

By: <u>/s/ *Philip L. Fraietta*</u>
Philip L. Fraietta

Philip L. Fraietta (State Bar No. 354768)
*pfraietta@bursor.com*
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0708
Facsimile: (914) 206-3656

L. Timothy Fisher (State Bar No. 191626)
*ltfisher@bursor.com*
Ines Diaz Villafana (State Bar No. 354099)

*idiaz@bursor.com*
**BURSOR & FISHER, P.A.**
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: 925.300.4455
Facsimile: 925.407.2700

Scott R. Drury (State Bar No. 355002)
*scott@drurylegal.com*
**DRURY LEGAL, LLC**
6 Carriage Lane
Highwood, Illinois 60040
Telephone: 312.358.8225

John J. Nelson (State Bar No. 317598)
*jnelson@milberg.com*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
402 W. Broadway, Suite 1760
San Diego, CA 92101
Telephone: 858.209.6941

Bryan L. Bleichner (State Bar No. 220340)
*bbleichner@chestnutcambronne.com*
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Phone: 612.339.7300
Fax: 612.336.2940

Spencer Campbell*
*scampbell@msdlegal.com*
**MARKOVITS, STOCK & DEMARCO, LLC**
119 E. Court St., Suite. 530
Cincinnati, OHIO 4502
Phone: 513.651.3700
Fax: 513.665.0219

Joseph M. Lyon*
*jlyon@thelyonfirm.com*

**THE LYON FIRM**
2754 Erie Ave.
Cincinnati, Ohio 45208
Telephone: 513.381.2333
Facsimile: 513.766.9011

Caleb Marker (SBN 269721)
*caleb.marker@zimmreed.com*
**ZIMMERMAN REED LLP**
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
Telephone: 877.500.8780
Facsimile: 877.500.8781

Christopher D. Jennings*
*chris@jefirm.com*
Winston Hudson*
*winston@jefirm.com*
**JENNINGS & EARLEY PLLC**
500 President Clinton Avenue, Suite 110
Little Rock, Arkansas 72201
(501) 255-8569

Rachel K. Tack*
*rachel.tack@zimmreed.com*
**ZIMMERMAN REED LLP**
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: 612.341.0400

*Attorneys for Plaintiff*

* *pro hac vice applications forthcoming*