UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JOHN DOE, individually and on behalf of all other persons similarly situated,

Plaintiffs,

v.

JEFF ENGEL, ERIN LAVIGNA, TIMOTHY CIRAOLO, LAUREN HEDGPETH, SEAN HLAVAC, SANDRA PHILLIPS, JENNIFER LAWRENCE, KIM KENNEDY, HALLIE JOHNSON, and HALLIE JACOB,

Defendants.

Case No.: 3:25-cv-02429-JES-VET

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS OR STA CLASS ACTION COMPLAINT**

**[ECF No. 15]**

Before the Court is Defendants' Jeff Engel, Erin Lavigna, Timothy Ciraolo, Lauren Hedgpeth, Sean Hlavac, Sandra Phillips, Jennifer Lawrence, Kim Kennedy, Hallie Johnson, and Hallie Jacobs' (collectively, "Defendants") Motion to Dismiss or, in the alternative, Stay the Class Action Complaint of Plaintiff John Doe ("Plaintiff"), under the *Colorado River* abstention doctrine or, in the alternative, Federal Rules of Civil Procedure ("Rule(s)") 12(b)(1) and 12(b)(6) ("Motion"). ECF No. 15. Plaintiff filed an opposition and Defendant filed a reply. ECF Nos. 16 ("Opp'n"), 17 ("Reply").

After the Motion was fully briefed, the parties filed a Joint Status Report advising that on July 31, 2026, the San Diego Superior Court granted the plaintiffs' motion to

dismiss the related action, *Porter, et al. v. The Regents of the University of California*, No. 37-2023-00011636-CU-NP-CTL (San Diego Super. Ct.) ("*Porter*"), without prejudice. ECF No. 21. That development resolves the Motion's threshold abstention argument and requires the Court to reach the merits of Defendants' Rule 12 arguments. For the reasons stated below, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

Plaintiff is a patient of UC San Diego Health ("UCSD Health") who used UCSD Health's website (the "Website") to schedule appointments, obtain medications and test results, and research physicians, including a search for a neurologist to treat a concussion. ECF No. 1 ("Compl.") ¶¶ 90–91. Each Defendant is a UCSD Health employee whose responsibilities touched the Website's marketing, analytics, or engineering. *Id.* ¶¶ 11–20. Plaintiff alleges that Defendants integrated and embedded third-party analytics and tracking software, specifically Meta Pixel, Google Analytics, and Fullstory Session Replay (the "Tracking Code"), into the Website, allowing Meta Platforms, Inc., Google LLC, and Fullstory, Inc. (collectively, the "Third Parties") to intercept and receive UCSD Health patients' communications, including protected health information and personally identifiable information. *Id.* ¶¶ 3, 5, 25, 68–89.

Plaintiff brings two claims, individually and on behalf of a putative nationwide class: (1) violation of the Federal Wiretap Act, as amended by the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510 *et seq.*; and (2) invasion of privacy under Article I, Section 1 of the California Constitution. *Id.* ¶¶ 117–143.

## II. LEGAL STANDARD

### A. *Colorado River* Abstention

*Colorado River* permits a federal court, in "exceptional circumstances," to stay or dismiss an action in deference to a parallel, pending state proceeding. 424 U.S. at 817–19. The doctrine applies only where the state and federal actions are parallel and substantially similar. *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989). Courts weigh eight

factors, with the balance "heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).

**B. Rule 12(b)(1) – Lack of Subject Matter Jurisdiction**

A motion to dismiss under Rule 12(b)(1) challenges the subject matter jurisdiction of the action. Fed. R. Civ. P. 12(b)(1). A complaint must be dismissed for lack of subject matter jurisdiction where a plaintiff lacks Article III standing. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The plaintiff bears the burden of establishing jurisdiction. *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). To establish standing, a plaintiff must demonstrate: (1) an injury in fact; (2) a causal connection between the injury and the challenged conduct; and (3) redressability by a favorable decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The injury in fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id*. "[N]o concrete harm, no standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021).

Where a jurisdictional question is "intertwined with the merits" — that is, where resolution of the jurisdictional issue requires the court to resolve issues of fact going to the merits — the court may not properly resolve the issue under Rule 12(b)(1). *Safe Air for Everyone*, 373 F.3d at 1039–40. In that circumstance, the motion should be resolved under Rule 12(b)(6) rather than converted into a jurisdictional dismissal. *Id*.

**C. Rule 12(b)(6) – Failure to State a Claim**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim tests the legal sufficiency of a plaintiff's claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When considering the motion, the court must accept as true all well-pleaded factual allegations in the complaint. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court need not accept as true legal conclusions cast as factual allegations. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient).

A complaint must "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. To survive a motion to dismiss, a complaint must include non-conclusory

factual content. *Id.* at 555; *Iqbal*, 556 U.S. at 679. The facts and the reasonable inferences drawn from those facts must show a plausible—not just a possible—claim for relief. *Twombly*, 550 U.S. at 556; *Iqbal*, 556 U.S. at 679; *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). The focus is on the complaint, as opposed to any new facts alleged in, for example, the opposition to a defendant's motion to dismiss. *See Schneider v. California Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998), *reversed and remanded on other grounds as stated in* 345 F.3d 716 (9th Cir. 2003). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss*, 572 F.3d at 969.

When a court dismisses a complaint under Rule 12(b)(6), it must then decide whether to grant leave to amend. Federal Rule 15(a) provides that a district court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). A district court has discretion to deny leave to amend when a proposed amendment would be futile. *Chappel v. Lab. Corp. of America*, 232 F.3d 719, 725-26 (9th Cir. 2000). Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies of the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003). In other words, if allowing a party to amend its pleading would be futile, district courts properly decline to grant leave to amend. *Thinket Ink Info. Res., Inc. v. Sun Microsys., Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004) (citing *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991)).

## III. JUDICIAL NOTICE

Generally, on a motion to dismiss, the court's review is limited to the contents of the complaint and the court may only consider extrinsic evidence that is properly presented as part of the complaint without converting the motion to dismiss into a motion for summary judgment. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). However,

under Federal Rule of Evidence 201, a district court may take notice of facts not subject to reasonable dispute that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b)(2).

Defendants request the court take judicial notice of three items:

> 1. Notice of Entry of Order, *Nancy Porter et al. v. The Regents of the University of California, d/b/a UC San Diego Health and Does 1 through-10, inclusive* (San Diego. Super. Ct.) No. 37-2023-00011636-CU-NP-CTL (the "*Porter* Action"), ROA 150, 8/22/2025, a true and correct copy of which is attached hereto as Exhibit A;
>
> 2. Plaintiffs' First Amended Consolidated Class Action Complaint, *Porter* Action, ROA 159, 9/5/2025, a true and correct copy of which is attached hereto as Exhibit B; and
>
> 3. Order Sustaining Demurrer, *Porter* Action, ROA 92, 2/2/24, a true and correct copy of which is attached hereto as Exhibit C.

ECF No. 15-2 at 2 ("RJN").

The Court may take judicial notice of "matters of public record." *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986). In the Ninth Circuit, "court filings and other matters of public record" are sources whose accuracy cannot reasonably be questioned for the purposes of Rule 201. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). "The court . . . must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2).

Here, the requested items are all matters of public record and appropriate for the court to take judicial notice. Further, Plaintiff does not oppose Defendant's request for judicial notice. Thus, the request for judicial notice is **GRANTED**.

## IV. DISCUSSION

Defendants move to dismiss or stay on four grounds: (1) abstention under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), in light of the then-pending *Porter* action; (2) lack of Article III standing; (3) discretionary immunity under California Government Code § 820.2; and (4) failure to state a claim as to both counts.

### A. Colorado River Abstention

The dismissal of *Porter* eliminates the parallel proceeding on which the Motion's abstention argument was premised. *Colorado River* requires an actual pending, substantially similar state action; *Porter* no longer exists. *Nakash*, 882 F.2d at 1416. Defendants' own Reply recognized as much, distinguishing *Cingular Wireless, LLC v. Thurston County*, 150 Fed. App'x 633, 634 (9th Cir. 2005), on the ground that it involved a state action that was "no longer pending." Reply at 3. That is now this case's posture.

The Court accordingly does not weigh the eight *Colorado River* factors. The Motion to stay or dismiss on abstention grounds is **DENIED AS MOOT**.

The dismissal was entered without prejudice, and Plaintiff represented in his Opposition that the *Porter* plaintiffs were "in the process of dismissing the action" well before it occurred. Opp'n at 15. Should a substantially similar action be refiled in state court, Defendants may renew a *Colorado River* motion on the then-current record.

### B. Article III Standing

Defendants argue that Plaintiff's alleged injury, the interception of routine browsing metadata such as IP addresses, URLs, and button clicks, does not bear a close relationship to a traditionally recognized privacy harm. Mot. at 20-23; see *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025) (allegations of generic browsing metadata did not resemble a "highly offensive" disclosure).

That characterization does not capture the complaint. Plaintiff alleges that the Tracking Code intercepted and transmitted, together with his persistent Facebook and device identifiers, the substance of his search for medical care: his search for "a neurologist to treat his concussion." Compl. ¶¶ 69–72, 87, 90, 92. Courts applying *Popa* and *TransUnion* have found that intercepted health-related search activity, tied to a plaintiff's identifiers, states a concrete privacy injury closely analogous to intrusion upon seclusion. *Atkins v. Amplitude, Inc.*, No. 24-cv-04913-RFL, 2025 WL 2521732, at *1 (N.D. Cal. Sept. 2, 2025); *Camplisson v. Adidas America, Inc.*, 809 F. Supp. 3d 1095, 1105-06 (S.D. Cal. 2025); *Gabrielli v. Haleon U.S., Inc.*, 815 F. Supp. 3d 852, 865 (N.D. Cal. 2025). Medical

search activity is materially more sensitive than the commercial browsing data at issue in *Popa*, *Rodriguez v. Culligan International Co.*, No.: 25-cv-00225-AJB-KSC, 2025 WL 3064113, at *3 (S.D. Cal. Nov. 3, 2025), and *Phillips v. U.S. Customs & Border Protection*, 74 F.4th 986, 995–96 (9th Cir. 2023), none of which involved data the courts found "so sensitive" that its collection alone created a concrete injury.

Defendants also argue that Plaintiff's allegations about how the Tracking Code functions are too generic. Mot. at 22. Plaintiff need only plausibly allege his claim, and his allegations about the Tracking Code's mechanics are paired with a specific, non-conclusory allegation about his own search. Compl. ¶¶ 25, 32–67, 90, 92. Whether Plaintiff can substantiate that his own communications were intercepted is a question for summary judgment, not the pleadings.

The Court, accordingly, **DENIES** the Motion to Dismiss as to Rule 12(b)(1).

**C. Discretionary Immunity Under California Government Code § 820.2**

Under California Government Code § 820.2, "a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Gov't Code § 820.2. Section 820.2 immunizes a public employee for an injury resulting from basic "policy and planning decisions," not for "lower level decisions that merely implement a basic policy already formulated." *Jacqueline T. v. Alameda County Child Prot. Servs.*, 155 Cal. App. 4th 456, 465 (2007) (citing *Barner v. Leeds*, 24 Cal. 4th 676, 685 (2000). The party asserting the immunity must show the employee "consciously exercised discretion in the sense of assuming certain risks in order to gain other policy objectives," a showing the California Supreme Court has cautioned is generally unsuited to resolution on the pleadings. *Lopez v. S. Cal. Rapid Transit Dist.*, 40 Cal. 3d 780, 794 (1985).

The Complaint alleges that each Defendant implemented, installed, or embedded the Tracking Code "at UCSD Health's direction," not that any Defendant made the underlying policy decision. Compl. ¶¶ 11–20, 106. Taken as true, this plausibly alleges ministerial

implementation of a policy set elsewhere in the organization, which falls outside § 820.2. *See Jacqueline T.*, 155 Cal. App. 4th at 465. The cases Defendants cite involved defendants who personally held the discretionary authority at issue: a county treasurer's investment decisions in *San Mateo Union High School District v. County of San Mateo*, 213 Cal. App. 4th 418, 434 (2013), and a public administrator's decision not to pay a debt in *Saltares v. Kristovic*, 6 Cal. App. 3d 504, 519 (1970). Both are distinguishable on that basis.

Whether any individual Defendant's conduct reflected a conscious policy choice, rather than implementation of UCSD Health's choice, cannot be resolved on the face of the Complaint. The Court **DENIES** the Motion as to section 820.2 immunity, without prejudice to renewal at summary judgment.

### D. The ECPA Claim – Count 1

The Wiretap Act, as amended by ECPA, prohibits the intentional interception of the contents of an electronic communication. 18 U.S.C. § 2511(1)(a). A civil plaintiff must plausibly allege an interception of the contents of an electronic communication by a person who engaged in the violation. *Id.* §§ 2510(4), (8), 2511(1)(a), 2520(a).

#### 1. Individual Wrongdoing

Defendants contend the Complaint alleges no facts of wrongdoing against any individual Defendant. Mot. at 14. The Court disagrees. The Complaint separately alleges each Defendant's job title and specific responsibilities regarding the Tracking Code. For example, Engel personally performed "programming work related to the UCSD Health Website, including programming Tracking Code," and that Ciraolo oversaw "the Tracking Code installed, integrated, embedded and used in connection with the Website." Compl. ¶¶ 11, 13; *see also id.* ¶¶ 12, 14–20. These are particularized factual allegations, not conclusory recitations of a defendant's title.

#### 2. Procurement Theory

Section 2511(1)(a) defines a prohibited interception to include one who "procures another person to intercept." But the civil remedy in § 2520(a) runs only against a person "which engaged in that violation." The weight of authority holds that Congress's 1986

amendment narrowed the civil remedy to exclude those who merely procure, enable, aid, or abet another's interception. *Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1247–48 (10th Cir. 2012); *In re Easysaver Rewards Litig.*, 737 F. Supp. 2d 1159, 1184 (S.D. Cal. 2010); *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1268–69 (N.D. Cal. 2001); *Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 168–69 (5th Cir. 2000). Plaintiff's principal authority, to the contrary, an unpublished transcript ruling in *Doe 1 v. Scripps Health*, No. 3:23-cv-02215-AGS-DEB (S.D. Cal.), ECF No. 43, is unavailable in any reporter or database and does not persuade the Court to depart from this published authority.

To the extent Count 1 rests on the theory that Defendants "procured" the Third Parties to intercept Plaintiff's communications, Compl. ¶¶ 126–127, the Motion is **GRANTED**.

**3. Contemporaneous Interception**

The Complaint does not rest solely on procurement. It alleges that the Tracking Code is itself the interception mechanism: when a browser requests a page from UCSD Health's server, the embedded code contemporaneously and covertly directs the browser to duplicate that communication to the Third Parties' servers in real time, "concurrent with the communications with the host website." Compl. ¶¶ 36–38, 65. Construed in Plaintiff's favor, this alleges that Defendants' own conduct, not merely a request that a third party separately intercept, caused the acquisition of the communications' contents while in transit. Courts confronting similar website-tracking allegations have found a contemporaneous, duplicative transmission of this kind sufficient at the pleading stage, reserving for summary judgment the more granular questions addressed in the decisions Defendants cite. *Doe v. Eating Recovery Center LLC*, 806 F. Supp. 3d 1109 (N.D. Cal. 2025); *Torres v. Prudential Financial*, No. 22-cv-07465 (CRB), 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025). Those decisions resolve the question on a developed record; this Court does not have one.

//

//

**4. Content**

The ECPA protects the "contents" of a communication (its "substance, purport, or meaning"), not non-content routing data such as a bare IP address. 18 U.S.C. § 2510(8); *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106–07 (9th Cir. 2014). To the extent the Complaint rests on generic metadata, that data alone is not content. But the Complaint also alleges the transmission of what Plaintiff typed and searched for: full-string queries identifying specific medical conditions and providers, and free-text entries such as "I have early onset dementia" and "Do I have COVID?" Compl. ¶¶ 69–71, 87. That is content. The claim survives to that extent.

The Motion is **GRANTED IN PART** as to Count 1, to the extent it rests on a procurement theory, and **DENIED IN PART** as to the theory that Defendants' own conduct effected a contemporaneous interception of content.

**E. The California Constitutional Privacy Claim – Count 2**

To state a claim for invasion of privacy under Article I, Section 1 of the California Constitution, Plaintiff must allege that "(1) a defendant intentionally intruded into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy, and (2) the intrusion occurred in a manner highly offensive to a reasonable person." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) (citing *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009) (cleaned up). Defendants dispute that there was a serious invasion of privacy because the data collected and disclosed was routine commercial behavior and thus not highly offensive. Mot. at 35-36. The Court disagrees.

California courts recognize a well-established privacy interest in medical history and information, *Ojeda v. Kaiser Permanente Int'l, Inc.*, No. EDCV 22-1057-MWF (GJS), 2022 WL 18228249, at *6 (C.D. Cal. Nov. 29, 2022), and treat health-related website activity as distinguishable from ordinary commercial browsing data. *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799–800 (N.D. Cal. 2022). Plaintiff's allegation that his search for a neurologist to treat a concussion was intercepted and disclosed without

his knowledge or consent, Compl. ¶¶ 90, 92, 142, is sufficiently particularized, unlike the generic allegations in *B.K. v. Eisenhower Medical Center*, 721 F. Supp. 3d 1056, 1064 (C.D. Cal. 2024), and involves more sensitive information than the routine commercial data in *Hubbard v. Google LLC*, No. 19-cv-07016-SVK, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024). Courts are generally reluctant to resolve the "highly offensive" element on the pleadings. *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009).

Defendants characterize the *Porter* court's February 2024 order sustaining a demurrer as having "reject[ed] analogous wiretapping and privacy claims" against UCSD Health. Reply at 3. It did not. That order sustained the demurrer only as to a CIPA claim, and only because CIPA's criminal-statute definitions exclude public entities, a ground with no bearing on the individual Defendants here or on Plaintiff's federal Wiretap Act claim. RJN at 68-69. On the same tracking-code allegations, the *Porter* court overruled the demurrer to the CMIA claim, the California constitutional privacy claim, and the common-law privacy claim, holding them sufficient under the same "highly offensive" standard. *Id.* at 69-70.

The Court **DENIES** the Motion as to Count 2.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART** as follows:

(1) The Motion to stay or dismiss under *Colorado River* is **DENIED AS MOOT**;

(2) The Motion to dismiss under Rule 12(b)(1) is **DENIED**;

(3) The Motion to dismiss under discretionary-immunity grounds is **DENIED**, without prejudice to renewal at summary judgment;

(4) The Motion to dismiss Count 1 is **GRANTED** as to Plaintiff's procurement theory and otherwise **DENIED**;

(5) The Motion to dismiss Count 2 is **DENIED**; and

(6) Defendants **SHALL FILE** an answer to the Complaint within twenty-one (21) days of the date of this Order. Fed. R. Civ. P. 12(a)(4)(A).

**IT IS SO ORDERED**.

Dated: September 29, 2026

Honorable James E. Simmons Jr.
United States District Judge