ALEXANDER VITRUK (SBN 315756)
**BAKER & HOSTETLER LLP**
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067-4301
Telephone: (310) 820-8800
Facsimile: (310) 820-8859
Emails: *avitruk@bakerlaw.com*

*Attorney for Defendants*
JEFF ENGEL, ERIN LAVIGNA, TIMOTHY CIRAOLO, LAUREN HEDGPETH, SEAN HLAVAC, SANDRA PHILLIPS, JENNIFER LAWRENCE, KIM KENNEDY, HALLIE JOHNSON, and HALLIE JACOBS

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

JOHN DOE, individually and on behalf of all other persons similarly situated,

*Plaintiff*,

v.

JEFF ENGEL, ERIN LAVIGNA, TIMOTHY CIRAOLO, LAUREN HEDGPETH, SEAN HLAVAC, SANDRA PHILLIPS, JENNIFER LAWRENCE, KIM KENNEDY, HALLIE JOHNSON, and HALLIE JACOBS,

*Defendants*.

Case No.: 3:25-CV-02429-JES-VET

[Judge: Hon. James E. Simmons, Jr.]
[Magistrate Judge: Hon. Valerie E. Torres]

**DEFENDANTS' ANSWER TO CLASS ACTION COMPLAINT**

Complaint Filed: September 16, 2025

## PRELIMINARY STATEMENT

Defendants Jeff Engel, Erin Lavigna, Timothy Ciraolo, Lauren Hedgpeth, Sean Hlavac, Sandra Phillips, Jennifer Lawrence, Kim Kennedy, Hallie Johnson, and Hallie Jacobs ("Defendants"), by and through counsel, Baker & Hostetler LLP, and in accordance with Federal Rule of Civil Procedure ("FRCP") 8(b)-(c), hereby answer the allegations in the Class Action Complaint ("Complaint") filed by plaintiff John Doe ("Plaintiff"). Unless expressly admitted herein, Defendants deny the allegations in the Complaint and deny that they are liable to Plaintiff or the putative class (as that term is defined in the Complaint). Defendants deny that this case is suitable for class certification, including because, *inter alia*, the putative class does not meet the requirements of FRCP 23. Specifically, Defendants deny that Plaintiff is an adequate representative of any purported class; his claims are typical; common questions of law or fact affecting the individual members of the putative class predominate; a class action is manageable or superior; and/or there is an ascertainable class with a community of interest. Defendants deny any citations in the footnotes of the Complaint to the extent they are inaccurate. Defendants admit that any source cited in the footnotes speaks for itself and otherwise deny the accuracy of any source cited in the footnotes, as Defendants lack sufficient information to admit the same. Plaintiff's unnumbered headers throughout the Complaint constitute organizational breaks in the document to which no response is required; however, to the extent there are any allegations of factual or legal nature contained therein, Defendants deny such allegations.

For their answer to Plaintiff John Doe's Complaint, Defendants state as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this class action lawsuit on behalf of all California citizens to address Defendants' practice of enabling unauthorized third parties, including, inter alia, Meta Platforms, Inc. ("Meta"); Google LLC ("Google"); and

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Fullstory, Inc. ("Fullstory") (collectively, the Third Parties), to intercept Plaintiff's and Class Members' confidential, health-related communications with their medical provider, the University of California, San Diego Health ("UCSD Health").

**ANSWER:** Defendants admit that Plaintiff purports to bring this action as a class action on behalf of certain California citizens. Defendants deny the remainder of the allegations contained in Paragraph 1 of the Complaint.

2. When patients, including Plaintiff and Class Members, communicated with UCSD Health via UCSD Health's owned and operated websites, software and mobile applications, and other online platforms, including the website https://health.ucsd.edu/ and its related patient portal (collectively, the "Website"), the communications contained therein were intercepted and disclosed to unauthorized third parties as a result of the analytics and tracking tools Defendants embedded in the source code of the Website.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendants admit that UCSD Health owns and operates the website https://health.ucsd.edu/, which speaks for itself, and denies any other interpretations or legal conclusions regarding https://health.ucsd.edu/ or the "Website". Defendants lack sufficient information to form a belief as to the truth of the remaining allegations and, on that basis, deny the allegations.

3. Defendants are or were employees of UCSD Health, and were responsible, in various forms and capacities, for implementing, embedding, or installing analytics and tracking tools on the Website, at the direction of their employer, UCSD Health.

**ANSWER:** Defendants admit that they are or were employees of UCSD Health and otherwise deny the allegations, including any other interpretations or legal conclusions regarding their employment.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

4. UCSD Health encourages patients to use the Website for accessing medical care, such as booking medical appointments, locating physicians and treatment facilities, communicating medical symptoms, searching medical conditions and treatment options, signing up for events and classes, and more.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 4 of the Complaint.

5. Plaintiff and other Class Members who used the Website believed they were communicating only with their trusted health care provider. Unbeknownst to Plaintiff and Class Members, however, the Website's source code contained analytics and tracking software ("Tracking Code"), which surreptitiously tracked and transmitted Plaintiff's and Class Members' online activity (such as button clicks, keystrokes, and page views) and communications (including intimate details about their medical treatment and appointments, including protected health information and personally identifiable information) to third parties via the Tracking Code.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendants lack sufficient information to form a belief as to what Plaintiff and putative Class Members "believed" and, on that basis, deny those allegations. Defendants deny the remainder of the allegations, including that any "protected health information" or "personally identifiable information" were transmitted.

6. Accordingly, Plaintiff seeks to remedy these harms and bring a cause of action for Defendants' violation of the Federal Wiretap Act, 18 U.S.C. § 2510, et seq. and invasion of privacy under California's constitution.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 6 of the Complaint.

## JURISDICTION AND VENUE

7. The Court has jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(a), 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and there are more than 100 members of the Nationwide Class and the California Class, and there is minimal diversity.

**ANSWER:** Paragraph 7 contains legal conclusions that do not require a response. To the extent a response is required, Defendants deny the allegations, including that Plaintiff or the putative Class are entitled to any relief.

8. The Court has personal jurisdiction over each Defendant because, upon information and belief, each Defendant resides in California and/or is employed by the UCSD Health, a California entity. Moreover, upon information and belief, each Defendant engaged in the wrongful conduct alleged in California.

**ANSWER:** Paragraph 8 contains legal conclusions that do not require a response. To the extent a response is required, Defendants admit that each Defendant is or was employed by UCSD Health, lives or lived in California, and otherwise deny the allegations.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District. Further, Defendants reside in this District.

**ANSWER:** Paragraph 9 contains legal conclusions that do not require a response. To the extent a response is required, Defendants deny the allegations.

## THE PARTIES

***Plaintiff***

10. Plaintiff John Doe is an adult citizen of the state of California and is domiciled in San Diego County, California.

**ANSWER:** Defendants lack sufficient information to form a belief as to the truth of the allegation and, on that basis, deny the allegation.

***Defendants***



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

11. At relevant times, Defendant Jeff Engel was a programmer/application analyst at UCSD Health, whose job responsibilities included, inter alia, programming work related to the UCSD Health Website, including programming Tracking Code on the Website (including the Website's patient portal). At relevant times, Defendant Engel was acting within the scope of his employment in connection with the installation, integration, embedding and use of Tracking Code on the Website. Plaintiff brings suit against Defendant Engel in his individual capacity.

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants admit that Jeff Engel was a programmer/application analyst at UCSD Health whose job responsibilities included, inter alia, programming work and otherwise deny the allegations, including any other interpretations or legal conclusions regarding their employment.

12. At relevant times, Defendant Erin Lavigna was the Marketing and Brand Management Executive Director at UCSD Health, whose job responsibilities included, inter alia, participating in or supervising the development of advertising campaigns, overseeing marketing and the marketing team at UCSD Health and working with others to determine advertisement placements, data collection and metrics with respect to the Website. At relevant times, Defendant Lavigna was acting within the scope of her employment in connection with the installation, integration, embedding and use of Tracking Code on the Website. Plaintiff brings suit against Defendant Lavigna in her individual capacity.

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants admit that Erin Lavigna was the Marketing and Brand Management Executive Director at UCSD Health, whose job responsibilities included, inter alia, participating in or supervising the development of advertising campaigns at and otherwise deny the allegations, including any other interpretations or legal conclusions regarding their employment.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

13. At relevant times, Defendant Timothy Ciraolo was the Website Operations Director at UCSD Health, whose job responsibilities included, inter alia, overseeing the planning, development, implementation and governance of the Website; overseeing the Tracking Code installed, integrated, embedded and used in connection with the Website; and managing the Website Marketing Team, including the Marketing Team's installation, integration, embedding and use of Tracking Code in connection with the Website. At relevant times, Defendant Ciraolo was acting within the scope of his employment in connection with the installation, integration, embedding and use of Tracking Code on the Website. Plaintiff brings suit against Defendant Ciraolo in his individual capacity.

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants admit that Timothy Ciraolo was the Website Operations Director at UCSD Health, whose job responsibilities included, inter alia, managing the Website Marketing Team and otherwise deny the allegations, including any other interpretations or legal conclusions regarding their employment.

14. At relevant times, Defendant Lauren Hedgpeth was the Marketing and Advertising Director at UCSD Health, whose job responsibilities included, inter alia, participating in the development of advertising campaigns, including Website advertising campaigns; overseeing marketing and the Marketing Team at UCSD Health; and working with others to determine advertisement placements, data collection and metrics with respect to the Website. At relevant times, Defendant Hedgpeth was acting within the scope of her employment in connection with the installation, integration, embedding and use of Tracking Code on the Website. Plaintiff brings suit against Defendant Hedgpeth in her individual capacity.

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants admit that Lauren Hedgpeth was the Director of Marketing at UCSD Health, whose job responsibilities

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

included, inter alia, participating in the development of advertising campaigns and otherwise deny the allegations, including any other interpretations or legal conclusions regarding their employment.

15. At relevant times, Defendant Sean Hlavac was the Director of Digital Experience at UCSD Health, whose job responsibilities included, inter alia, working with the Marketing Team at UCSD Health to shape search engine marketing and search engine optimization strategies in connection with the Website and participating in Website content creation for advertising campaigns. At relevant times, Defendant Hlavac was acting within the scope of his employment in connection with the installation, integration, embedding and use of Tracking Code on the Website. Plaintiff brings suit against Defendant Hlavac in his individual capacity.

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants admit that Sean Hlavac was the Director of Digital Experience at UCSD Health, whose job responsibilities included, inter alia, participating in Website content creation for advertising campaigns and otherwise deny the allegations, including any other interpretations or legal conclusions regarding their employment.

16. At relevant times, Defendant Sandra Phillips was the Marketing Content Strategy Director at UCSD Health, whose job responsibilities included, inter alia, managing organic and boosted content on social media channels, working with the Marketing Team and others at UCSD Health to determine advertisement placements, data collection and metrics with respect to the Website. At relevant times, Defendant Phillips was acting within the scope of her employment in connection with the installation, integration, embedding and use of Tracking Code on the Website. Plaintiff brings suit against Defendant Phillips in her individual capacity.

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants admit that Sandra

Phillips was the Director of Content Strategy at UCSD Health, whose job responsibilities included, inter alia, managing organic and boosted content on social media channels and otherwise deny the allegations, including any other interpretations or legal conclusions regarding their employment.

17. At relevant times, Defendant Jennifer Lawrence was the Associate Director of Marketing at UCSD Health, whose job responsibilities included, inter alia, overseeing marketing and the Marketing Team at UCSD Health; supervising the development of advertising campaigns, including Website-related advertising campaigns; and working with others to determine advertisement placements, data collection and metrics with respect to the Website. At relevant times, Defendant Lawrence was acting within the scope of her employment in connection with the installation, integration, embedding and use of Tracking Code on the Website. Plaintiff brings suit against Defendant Lawrence in her individual capacity.

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants admit that Jennifer Lawrence was the Associate Director of Marketing at UCSD Health, whose job responsibilities included, inter alia, the development of advertising campaigns and otherwise deny the allegations, including any other interpretations or legal conclusions regarding their employment.

18. At relevant times, Defendant Kim Kennedy was the Chief Marketing and Communications Officer at UCSD Health, whose job responsibilities included, inter alia, participating in or supervising the development of advertising campaigns, including Website-related advertising campaigns; overseeing marketing and the Marketing Team at UCSD Health; and working with others to determine advertisement placements, data collection and metrics with respect to the Website. At relevant times, Defendant Kennedy was acting within the scope of her employment in connection with the installation, integration, embedding and use of

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Tracking Code on the Website. Plaintiff brings suit against Defendant Kennedy in her individual capacity.

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants admit that Kim Kennedy was the Chief Marketing and Communications Officer at UCSD Health, whose job responsibilities included, inter alia, participating in the development of advertising campaigns and otherwise deny the allegations, including any other interpretations or legal conclusions regarding their employment.

19. At relevant times, Defendant Hallie Johnson was a Senior Marketing Manager at UCSD Health, whose job responsibilities included, inter alia, participating in the development of advertising campaigns, including Website-related advertising campaigns; overseeing marketing and the Marketing Team at UCSD Health; and working with others to determine advertisement placements, data collection and metrics with respect to the Website. At relevant times, Defendant Johnson was acting within the scope of her employment in connection with the installation, integration, embedding and use of Tracking Code on the Website. Plaintiff brings suit against Defendant Johnson in her individual capacity.

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants admit that Hallie Johnson was a Marketing Manager at UCSD Health, whose job responsibilities included, inter alia, participating in the development of advertising campaigns and otherwise deny the allegations, including any other interpretations or legal conclusions regarding their employment.

20. At relevant times, Defendant Hallie Jacobs was a Social Media Specialist at UCSD Health, whose responsibilities included, inter alia, managing organic and boosted content on social media channels, working with the Marketing Team at UCSD Health and collaborating with others to determine advertisement placements, data collection and metrics with respect to the Website. At relevant

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

times, Defendant Jacobs was acting within the scope of her employment in connection with the installation, integration, embedding and use of Tracking Code on the Website. Plaintiff brings suit against Defendant Jacobs in her individual capacity.

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants admit that Hallie Jacobs was a Social Media Specialist at UCSD Health, whose responsibilities included, inter alia, managing organic and boosted content on social media channels and otherwise deny the allegations, including any other interpretations or legal conclusions regarding their employment.

## FACTUAL ALLEGATIONS

### A. Background of the Federal Wiretap Act

21. The original Federal Wiretap Act was enacted in 1934 "as a response to Fourth Amendment concerns surrounding the unbridled practice of wiretapping to monitor telephonic communications."[1]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendants state that the provisions of the Federal Wiretap Act and the source quoted and cited in Paragraph 21 speak for themselves, and deny all other allegations in Paragraph 21 of the Complaint.

22. The Wiretap Act primarily concerned the government's use of wiretaps, but Congress grew concerned that technological advancements like "large-scale mail operations, computer-to-computer data transmissions, cellular and cordless telephones, paging devices, and video teleconferencing" were rendering the Wiretap Act out of date. S. Rep. No. 99-541, at 2 (1986). Thus, in 1986, Congress amended the Wiretap Act through the Electronic Communications Privacy Act ("ECPA") to

[1] Hayden Driscoll, *Wiretapping the Internet: Analyzing the Application of the Federal Wiretap Act's Party Exception Online*, 29 WASH. & LEE J. C.R. & SOC. JUST. 187, 192 (2022).



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

provide a private right of action for private sector intrusions as though they were government intrusions.[2]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendants state that the provisions of the Federal Wiretap Act and the source quoted and cited in Paragraph 22 speak for themselves, and deny all other allegations in Paragraph 22 of the Complaint.

23. Title I of the ECPA amended the Wiretap Act such that a violation occurs when a person or entity: (i) provides an electronic communication service to the public; and (ii) intentionally divulges the contents of any communication; (iii) while the communication is being transmitted on that service; (iv) to any person or entity other than the intended recipient of such communication.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendants state that the provisions of the Federal Wiretap Act speak for themselves, and deny all other allegations in Paragraph 23 of the Complaint.

24. While the ECPA allows a single party to consent to the interception of an electronic communication, single party consent is only acceptable where the communication is not "intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d).

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendants state that the provisions of the Federal Wiretap Act speak for themselves, and deny all other allegations in Paragraph 24 of the Complaint.

**B. The UCSD Health Website**

25. UCSD Health owns and operates the Website and provides patients with a platform to manage their health. Defendants, as employees of UCSD Health, and

[2] *Id.*

at the direction of UCSD Health, have purposefully integrated and embedded Meta's, Google's, and Fullstory's software into the Website to track patients' actions on the Website. Through this action, Defendants have aided the Third Parties in intercepting UCSD Health patients' communications containing protected health information ("PHI") and personally identifiable information ("PII") (PHI, PII, and communications related to PHI and PII known collectively as "Private Information"). The following describes the way in which the Meta, Google, and Fullstory software operates and intercepts patient communications on the Website. Plaintiff's and Class Members' communications were intercepted by Meta, Google, and Fullstory in the same manner described below.

**ANSWER:** Defendants admit that UCSD Health owns and operates https://health.ucsd.edu/ and that Defendants are employees of UCSD Health. The remainder of this paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations.



**C. The U.S. Department of Health and Human Services and Federal Trade Commission Have Warned About Use of Tracking Tools by Healthcare Providers.**

26. Considering tracking technology like those Defendants implemented on the Website, the U.S. Department of Health and Human Services ("HHS") issued a bulletin instructing regulated entities like Defendants' employer, UCSD Health, to only use such software in an extremely limited function:

> **Regulated entities [those to which HIPAA applies] are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of PHI to tracking technology vendors or any other violations of the HIPAA Rules**. For example, disclosures of PHI to tracking technology vendors for marketing purposes, without individuals' HIPAA-compliant authorizations, would constitute impermissible disclosures of [electronic protected health information] to tracking technology vendors or any other

violations of the HIPAA Rules.[3]

**ANSWER**: This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants admit that the source quoted and cited in paragraph 26 speaks for itself and denies any other interpretations, allegations, or legal conclusions.

27. In other words, HHS has expressly stated that entities like UCSD Health, that implement (as done by and through the Defendants here) the Meta Pixel, and other similar technologies like Google Analytics, and Fullstory Session Replay, have violated HIPAA Rules unless those entities obtain a HIPAA complaint authorization.

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 27 of the Complaint and, on that basis, deny the allegations.

28. The HHS Bulletin further warns that:

> While it has always been true that regulated entities may not impermissibly disclose PHI to tracking technology vendors, **because of the proliferation of tracking technologies collecting sensitive information, now more than ever, it is critical for regulated entities to ensure that they disclose PHI only as expressly permitted or required by the HIPAA Privacy Rule**.[4]

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants admit that the source quoted and cited in Paragraph 28 speaks for itself and deny any other interpretations, allegations, or legal conclusions.

---

[3] *See Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates*, U.S. Dep't of Health and Hum. Servs. (Dec. 1, 2022), https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaaonlinetracking/index.html (emphasis added).
[4] *Id.* (emphasis added).



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

29. Additionally, HHS has warned healthcare providers that Protected Information is not limited exclusively to patient portals like MyChart, and that providers like UCSD Health still have an obligation to protect information on nonpassword protected pages or unauthenticated pages:

> Tracking technologies on a regulated entity's unauthenticated webpage that addresses specific symptoms or health conditions, such as pregnancy or miscarriage, or that permits individuals to search for doctors or schedule appointments without entering credentials may have access to PHI in certain circumstances. For example, tracking technologies could collect an individual's email address and/or IP address when the individual visits a regulated entity's webpage to search for available appointments with a health care provider. In this example, the regulated entity is disclosing PHI to the tracking technology vendor, and thus the HIPAA Rules apply.[5]

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants admit that the source quoted and cited in Paragraph 29 speaks for itself and deny any other interpretations, allegations, or legal conclusions.

**D. Meta's Business Tools.**

30. Facebook, owned by Meta, describes itself as a "real identity platform,"[6] meaning users are allowed only one account and must share "the name they go by in everyday life."[7] To that end, when creating an account, users must provide their first and last name, along with their birthday and gender.[8]

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 30 of the Complaint to admit or deny. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 30 of the Complaint and, on that basis, deny the allegations.

---

[5] *Id.* (emphasis added).

[6] Sam Schechner and Jeff Horwitz, *How Many Users Does Facebook Have? The Company Struggles to Figure It Out*, WALL. ST. J. (Oct. 21, 2021).

[7] META, *Names Allowed on Facebook*, https://www.facebook.com/help/229715077154790/.

[8] FACEBOOK, SIGN UP, https://www.facebook.com.

31. In 2024, Meta generated over $164 billion in revenue.[9] With respect to the software and mobile applications offered by Meta, substantially all of Meta's revenue is generated by selling advertising space.[10]

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 31 of the Complaint to admit or deny. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 31 of the Complaint and, on that basis, deny the allegations.

32. Meta sells advertising space by highlighting its ability to target users.[11] Meta can target users so effectively because it surveils user activity both on and off its site.[12] This allows Meta to make inferences about users beyond what they explicitly disclose, like their "interests," "behavior," and "connections."[13] Meta compiles this information into a generalized dataset called "Core Audiences," which allows advertisers to reach precise audiences based on specified targeting types.[14]

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 32 of the Complaint to admit or deny. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 32 of the Complaint and, on that basis, deny the allegations.

---

[9] META, META ANNUAL REPORT 2024, https://d18rn0p25nwr6d.cloudfront.net/CIK-0001326801/a8eb8302-b52c-4db5-964f-a2d796c05f4b.pdf at 87.

[10] *Id.* at 6.

[11] META, WHY ADVERTISE ON FACEBOOK, INSTAGRAM AND OTHER META TECHNOLOGIES, https://www.facebook.com/business/help/205029060038706.

[12] META, ABOUT META PIXEL, https://www.facebook.com/business/help/742478679120153?id=1205376682832142.

[13] META, AD TARGETING: HELP YOUR ADS FIND THE PEOPLE WHO WILL LOVE YOUR BUSINESS, https://www.facebook.com/business/ads/ad-targeting.

[14] https://www.facebook.com/business/news/Core-Audiences.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

33. Advertisers can also build "Custom Audiences."[15] Custom Audiences enables advertisers to reach "people who have already shown interest in [their] business, whether they're loyal customers or people who have used [their] app or visited [their] website."[16] With Custom Audiences, advertisers can target existing customers directly, and they can also build "Lookalike Audiences," which "leverage[] information such as demographics, interests, and behavior from your source audience to find new people who share similar qualities."[17] Unlike Core Audiences, advertisers can build Custom Audiences and Lookalike Audiences only if they first supply Meta with the underlying data. They can do so through two mechanisms: by manually uploading contact information for customers or by utilizing Meta's "Business Tools."[18]

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 33 of the Complaint to admit or deny. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 33 of the Complaint and, on that basis, deny the allegations.

34. As Meta puts it, the Business Tools "help website owners and publishers, app developers, and business partners, including advertisers and others, integrate and share data with Meta, understand and measure their products and services, and better reach and serve people who might be interested in their products and services."[19] Put more succinctly, Meta's Business Tools are bits of code that

[15] META, ABOUT CUSTOM AUDIENCES, https://www.facebook.com/business/help/744354708981227?id=2469097953376494.
[16] META, AD TARGETING, HELP YOUR ADS FIND THE PEOPLE WHO WILL LOVE YOUR BUSINESS, https://www.facebook.com/business/ads/ad-targeting.
[17] META, ABOUT LOOKALIKE AUDIENCES, https://www.facebook.com/business/help/164749007013531?id=401668390442328.
[18] META, CREATE A CUSTOMER LIST CUSTOM AUDIENCE, https://www.facebook.com/business/help/170456843145568?id=2469097953376494; FACEBOOK, CREATE A WEBSITE CUSTOM AUDIENCE, https://www.facebook.com/business/help/1474662202748341?id=2469097953376494.
[19] META, THE META BUSINESS TOOLS, https://www.facebook.com/help/331509497253087.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

advertisers can integrate into their websites, mobile applications, and servers, thereby enabling Meta to intercept and collect user activity on those platforms.

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 34 of the Complaint to admit or deny. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 34 of the Complaint and, on that basis, deny the allegations.

35. The Business Tools are automatically configured to capture certain data, like when a user visits a webpage, that webpage's Universal Resource Locator ("URL") and metadata, or when a user downloads a mobile application or makes a purchase.[20] Meta's Business Tools can also track other events. Meta offers a menu of "standard events" from which advertisers can choose, including what content a visitor views or purchases.[21] Advertisers can even create their own tracking parameters by building a "custom event."[22]

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 35 of the Complaint to admit or deny. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 35 of the Complaint and, on that basis, deny the allegations.

36. One such Business Tool is the Meta Pixel. Meta offers this piece of code to advertisers, like UCSD Health, to integrate into their website. The Meta Pixel

---

[20] *See* META, META FOR DEVELOPERS: META PIXEL, ADVANCED, https://developers.facebook.com/docs/meta-pixel/advanced/; *see also* FACEBOOK, BEST PRACTICES FOR META PIXEL SETUP, https://www.facebook.com/business/help/218844828315224?id=1205376682832142; FACEBOOK, META FOR DEVELOPERS: MARKETING API - APP EVENTS API, https://developers.facebook.com/docs/marketing-api/app-event-api/.

[21] META, SPECIFICATIONS FOR META PIXEL STANDARD EVENTS, https://www.facebook.com/business/help/402791146561655?id=1205376682832142.

[22] META, ABOUT STANDARD AND CUSTOM WEBSITE EVENTS, https://www.facebook.com/business/help/964258670337005?id=1205376682832142; *see also* FACEBOOK, META FOR DEVELOPERS: MARKETING API – APP EVENTS API, https://developers.facebook.com/docs/marketing-api/app-event-api/.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

"tracks the people and type of actions they take."[23] When a user accesses a website hosting the Meta Pixel, Meta's software script surreptitiously directs the user's browser to contemporaneously send a separate message to Meta's servers. This second secret and contemporaneous transmission contains the original GET request sent to the host website, along with additional data that the Meta Pixel is configured to collect. This transmission is initiated by Meta code and concurrent with the communications with the host website. At relevant times, two sets of code were thus automatically run as part of the browser's attempt to load and read the UCSD Health' Website—UCSD Health's own code and Meta's embedded code.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 36 of the Complaint and, on that basis, deny the allegations.

37. An example illustrates the point. Take an individual who, at relevant times, navigated to the Website and clicked on a link for fertility care information. When that link was clicked, the individual's browser sent a GET request to UCSD Health's server requesting that server to load the particular webpage. As a result of the Meta Pixel on the Website, written in JavaScript, sent secret instructions back to the individual's browser, without alerting the individual that this was happening. Meta caused the browser to secretly duplicate the communication with the UCSD Health, transmitting it to Meta's servers, alongside additional information that transcribed the communication's content and the individual's identity.

**ANSWER:** Defendants deny the allegations in Paragraph 37 of the Complaint.

38. After collecting and intercepting the information described in the preceding paragraph, Meta processed it, analyzed it, and assimilated it into datasets like Core Audiences and Custom Audiences. In order to engage in the above-described processing, analysis and assimilation, on information and belief, Meta had to view the information being processed, analyzed and assimilated. Therefore, it

[23] META, RETARGETING, https://www.facebook.com/business/goals/retargeting.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

follows that Meta regularly and necessarily viewed and used health information collected and/or intercepted from Plaintiff and Class Members via the Meta Pixel.

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, the allegations require expert analysis and/or the information is in the possession of third parties, so Defendants lack sufficient information to form a belief as to the truth of the allegations and, on that basis, deny the allegations.

39. Further, once Meta intercepts users' communications on the Website, Meta has the ability to use the intercepted information for its own purposes beyond recording the information for UCSD Health. Meta benefits from the information it collects from its clients' websites because Meta uses this information to improve its advertising network, including its machine-learning algorithms and its ability to target users with ads.[24]

**ANSWER:** This paragraph contains allegations that require expert analysis or information in the possession of third parties, so Defendants lack sufficient information to form a belief as to the truth of the allegations and, on that basis, deny the allegations.

**E. Google's Platform and Its Business Tools**

40. Google offers a range of advertising software, one of which is called Google Analytics.

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 40 of the Complaint to admit or deny. To the extent a response is required, Defendants lack sufficient information to form a belief as to the truth of the allegation and, on that basis, deny the allegation.

41. "Google Analytics is a platform that collects data from [] websites and apps to create reports that provide insights" for businesses.[25] This is made possible

[24] META, PRIVACY POLICY, https://www.facebook.com/privacy/policy/.

[25] GOOGLE, HOW GOOGLE ANALYTICS WORKS, https://support.google.com/analytics/answer/12159447?hl=en&ref_topic=14089939&sjid=2827624563183915220-NC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

by Google Analytics, a piece of code installed on a website or app that collects information on how website and app users interact with a business's website, including "how many users bought an item . . . by tracking whether they made it to the purchase-confirmation page."[26]

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 41 of the Complaint to admit or deny. To the extent a response is required, Defendants admit that the sources quoted and cited in Paragraph 41 speak for themselves and otherwise lack sufficient information to form a belief as to the truth of the allegation and, on that basis, deny the allegation.

42. Google advertises that this service can "[m]onitor activity on your site as it happens."[27]

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 42 of the Complaint to admit or deny. To the extent a response is required, Defendants admit that the source quoted and cited in Paragraph 42 speaks for itself and otherwise lack sufficient information to form a belief as to the truth of the allegations and, on that basis, deny the allegations.

43. Google's business model involves entering into voluntary partnerships with various companies and surveilling communications on their partners' websites with Google Analytics.

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 43 of the Complaint to admit or deny. To the extent a response is required, Defendants lack sufficient information to form a belief as to the truth of the allegations and, on that basis, deny the allegations.

44. Thus, through websites and software and mobile applications that employ Google's services, Google directly receives the electronic communications of website visitors entered into websites via website and app features like search bars.

[26] *Id.*
[27] GOOGLE, THE FINER POINTS, https://marketingplatform.google.com/about/analytics/features/.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 44 of the Complaint to admit or deny. To the extent a response is required, Defendants lack sufficient information to form a belief as to the truth of the allegations and, on that basis, deny the allegations.

45. That information is then analyzed by Google before it is provided to any entity that was a party to the conversation (like UCSD Health). In order to conduct this analysis, Google, on information and belief, views the information.

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 45 of the Complaint to admit or deny. To the extent a response is required, Defendants lack sufficient information to form a belief as to the truth of the allegations and, on that basis, deny the allegations.

46. Once Google intercepts website or app communications, it has the capability to use such information for its own purposes. "Google uses the information shared by sites and apps to deliver [] services, maintain and improve them, develop new services, measure the effectiveness of advertising, protect against fraud and abuse, and personalize content and ads you see on Google and on [] partners' sites and apps."[28]

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 46 of the Complaint to admit or deny. To the extent a response is required, Defendants lack sufficient information to form a belief as to the truth of the allegations and, on that basis, deny the allegations.

47. Google's range of software services is based on Google's ability to collect and analyze information about consumers' web behavior and deliver targeted advertising to select consumers based on their web habits. This involves collecting visitor information from thousands of websites and then analyzing that information in order to group web users so they can be targeted for products or services based on their interests.

[28] GOOGLE, GOOGLE PRIVACY AND TERMS, https://policies.google.com/technologies/partner-sites.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 47 of the Complaint to admit or deny. To the extent a response is required, Defendants lack sufficient information to form a belief as to the truth of the allegations and, on that basis, deny the allegations.

48. In order to engage in analyzing the collected data to deliver targeted advertising, Google, on information and belief, regularly viewed and used the sensitive health information collected by the Google Analytics code. As such, on information and belief, Google regularly viewed and used Plaintiff's and Class Members' health information collected and/or intercepted via Google Analytics.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 48 of the Complaint and, on that basis, deny the allegations.

49. Information from websites and software and mobile applications, like the Website, is central to Google's ability to successfully market its advertising capabilities to future clients.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 49 of the Complaint and, on that basis, deny the allegations.

50. In sum, Google has the capability to use website and software and mobile application communications to: (a) improve its own products and services; (b) develop new Google for Business and Google Analytics products and services; and (c) analyze website visitors' communications to assist with and data analytics and targeted advertising.

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 50 of the Complaint to admit or deny. To the extent a response is required, Defendants lack sufficient information to form a belief as to the truth of the allegations and, on that basis, deny the allegations.

51. Further, Defendants, through the direction of UCSD Health, share information with Google that amounts to PII via its collection of device identifiers and IP addresses. Device identifiers and IP addresses are types of information that the U.S. Department of Health and Human Services lists as information that should be removed to de-identify a patient in compliance with the HIPAA.[29] Google uses IP addresses and unique device identifiers to track internet users. Therefore, Defendants, through the direction of UCSD Health, allow the interception of, and otherwise discloses, both PHI and PII to Google as described below.

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants admit that the source quoted and cited in Paragraph 51 speaks for itself and otherwise deny the allegations in Paragraph 51 of the Complaint.

52. Yet another type of PII obtained from Website users by Google, and subsequently viewed by Google, is what data companies refer to as a "browser-fingerprint." A browser-fingerprint is information collected about a computing device that can be used to identify the specific device.

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants lack sufficient information to form a belief as to the truth of the allegations and, on that basis, deny the allegations.

53. These browser-fingerprints provide a wide variety of data and can be used to uniquely identify individual users when a computing device's IP address is hidden or cookies are blocked. As Google explained, "[w]ith fingerprinting, developers have found ways to use tiny bits of information that vary between users, such as what device they have or what fonts they have installed to generate a unique

[29] U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, GUIDANCE REGARDING METHODS FOR DE-IDENTIFICATION OF PROTECTED HEALTH INFORMATION IN ACCORDANCE WITH THE HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT (HIPAA) PRIVACY RULE, https://www.hhs.gov/hipaa/forprofessionals/privacy/special-topics/de-identification/index.html#standard.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

identifier which can then be used to match a user across websites."[30] The value of browser-fingerprinting to advertisers (and trackers who want to monetize aggregated data) is that it can be used to track website users just as cookies do, but it employs much more subtle techniques.[31] Additionally, unlike cookies, users cannot clear their fingerprint and, therefore, cannot control how their personal information is collected.[32]

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 53 of the Complaint to admit or deny. To the extent a response is required, Defendants admit that the sources quoted and cited in Paragraph 53 speak for themselves and otherwise lack sufficient information to form a belief as to the truth of the allegations and, on that basis, deny the allegations.

54. In 2017, researchers demonstrated that browser fingerprinting techniques can successfully identify 99.24 percent of all users.[33]

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 54 of the Complaint to admit or deny. To the extent a response is required, Defendants admit that the source quoted and cited in Paragraph 54 speaks for itself and otherwise lack sufficient information to form a belief as to the truth of the allegations and, on that basis, deny the allegations.

55. Browser-fingerprints are personal identifiers, and Tracking Code can collect browser-fingerprints from website visitors.

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 55 of the Complaint to admit or deny. To the extent a response is required,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

[30] GOOGLE, BUILDING A MORE PRIVATE WEB, https://www.blog.google/products/chrome/building-a-more-private-web/.
[31] Chris Hauk, What is Browser Fingerprinting? How it Works and How to Stop it, https://pixelprivacy.com/resources/browser-fingerprinting/.
[32] *Supra* note 37.
[33] Yinzhi Cao, Song Li & Erik Wijmans, *(Cross-)Browser Fingerprinting via OS and Hardware Level Features*, https://www.ndss-symposium.org/ndss2017/ndss-2017-programme/cross-browser-fingerprinting-os-and-hardware-level-features/.

Defendants lack sufficient information to form a belief as to the truth of the allegations and, on that basis, deny the allegations.

56. Defendants use and cause the disclosure of data sufficient for third parties, like Google, to create a browser-fingerprint identifier with each re-directed communication described herein.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 56 of the Complaint and, on that basis, deny the allegations.

**F. Google's Floodlight Conversion Tracking System**

57. Google also offers a marketing platform that creates a "unified advertising and analytics platform for smarter marketing and better results."[34] As part of its platform, Google offers the Floodlight Conversion Tracking System which "consist[s] of tags that track activity on [a] site, along with reporting features for adding conversion data to [] reports."[35] Floodlight works by tracking a "Floodlight activity," which is a "specific conversion" a website or software or mobile application owner wants to track "such as . . . a visit to a page on [a] site."[36] Once a visitor conducts the tracked activity, a website tag reports the conversion to Floodlight.[37]

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 57 of the Complaint to admit or deny. To the extent a response is required, Defendants admit that the source quoted and cited in Paragraph 57 speaks for itself and otherwise lack sufficient information to form a belief as to the truth of the allegations and, on that basis, deny the allegations.

---

[34] GOOGLE MARKETING PLATFORM, https://marketingplatform.google.com/about/.
[35] GOOGLE, REPORT ON FLOODLIGHT CONVERSIONS, https://support.google.com/searchads/answer/7298761?hl=en&ref_topic=6054260&sjid=11536244677443819800-NC.
[36] *Id.*
[37] *Id.*



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

58. Floodlight uses "a cookie to recognize repeat visits from a specific browser."[38] Through the use of cookies, Google's advertising services, like Floodlight, can provide "personalized advertising" to an individual based on their actions on websites and software and mobile applications.[39]

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 58 of the Complaint to admit or deny. To the extent a response is required, Defendants admit that the source quoted and cited in Paragraph 58 speaks for itself and otherwise lack sufficient information to form a belief as to the truth of the allegations and, on that basis, deny the allegations.

59. A website or software or mobile application owner can also use Floodlight in a way that allows the "information associated with cookies used in advertising [to] be added to the user's Google Account."[40] Therefore, the cookies used for the Floodlight services are PII because they can be connected to a particular individual's Google Account.

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 59 of the Complaint to admit or deny. To the extent a response is required, Defendants lack sufficient information to form a belief as to the truth of the allegations and, on that basis, deny the allegations.

**G. Fullstory's Session Replay**

60. Fullstory's Session Replay software is an analytics tool embedded into a website via code that is used to reproduce a "user's interactions on a website or web application exactly how the user experienced it. Session replay transforms logged user events, such as mouse movements, clicks, page visits, scrolling, tapping, etc., into a reproduction of what the user actually did on the site or app."[41]

---

[38] *Id.*
[39] GOOGLE, HOW GOOGLE MARKETING PLATFORM ADVERTISING PRODUCTS AND GOOGLE AD MANAGER USE COOKIES, https://support.google.com/searchads/answer/2839090?sjid=11536244677443819800-NC.
[40] *Id.*
[41] https://www.fullstory.com/blog/session-replay/.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 60 of the Complaint to admit or deny. To the extent a response is required, Defendants admit that the source quoted and cited in Paragraph 60 speaks for itself and otherwise lack sufficient information to form a belief as to the truth of the allegations and, on that basis, deny the allegations.

61. Since Fullstory's Session Replay software logs all activity a user takes on an online platform, this includes any information the user enters into a website, such as things a user types into a website's search fields. Thus, Fullstory's Session Replay software can intercept communications website users type into a website, including PHI and PII.

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 61 of the Complaint to admit or deny, Paragraph 61 contains legal conclusions to which no response is required. To the extent a response is required, Defendants lack sufficient information to form a belief as to the truth of the allegations and, on that basis, deny the allegations.

62. Technology like the Fullstory Session Replay feature is not only highly intrusive, but dangerous. A 2017 study by Princeton University found that session replay technologies were collecting sensitive user information such as passwords and credit card numbers.[42] The research notes that this was not simply the result of a bug, but rather insecure practices.[43] Thus, session replay technologies, such as Fullstory's, leave users vulnerable to data leaks and the harm resulting therefrom.

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 62 of the Complaint to admit or deny. To the extent a response is required, Defendants admit that the sources cited in Paragraph 62 speak for themselves and otherwise lack sufficient information to form a belief as to the truth of the allegations and, on that basis, deny the allegations.

---

[42] Steven Englehardt, *No boundaries: Exfiltration of personal data by session-replyscripts*, (Nov. 15, 2017) https://freedom-to-tinker.com/2017/11/15/no-boundariesexfiltration-of-personal-data-by-session-replay-scripts/.
[43] *Id.*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

63. Fullstory, itself, notes that a challenge with using session replay software is ensuring the exclusion of the collection of sensitive data by choosing a session replay tool that "provide[s] for both the exclusion of sensitive data from being collected . . . and the ability to mask user inputs from view in a session replay.[44] While Fullstory's Session Reply software provides for these precautionary functions, they are not automatic. Even Fullstory's Private by Default setting, which "automatically masks all text elements except ones that are specifically allowlisted" [sic] is a setting that must be enabled.[45] Therefore, when a website operator uses Fullstory's Session Replay software, it places users at risk of having their PHI and PII shared with Fullstory.

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 63 of the Complaint to admit or deny. To the extent a response is required, Defendants admit that the sources quoted and cited in Paragraph 63 speak for themselves and otherwise lack sufficient information to form a belief as to the truth of the allegations and, on that basis, deny the allegations.

64. Thus, through websites that employ Fullstory's Session Replay software, such as the Website, Fullstory directly receives the recording of each website visit, including the electronic communications website visitors entered into search bars, chat boxes, and online quizzes, in real time.

**ANSWER:** Defendants admit that Fullstory's Session Replay may have been present on the Website at a certain time. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 64 of the Complaint and, on that basis, deny the allegations.

65. Fullstory's embedded JavaScript code operates within users' browsers, tracking their interactions (e.g., clicks, scrolls, typing, and other input data) on the website within which the code is embedded without the users' knowledge and

---

[44] https://www.fullstory.com/blog/session-replay/#session-replay-and-privacy.
[45] *Id.*



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

transmitting the information to Fullstory's servers, along with additional context about the session. In this manner, Fullstory effectively obtains a recorded replay of the users' experiences on the website. The data transmission described herein occurs concurrently with each user's activity, enabling Fullstory to intercept sensitive data as it is generated. In other words, Fullstory's interception of users' communications on a website occurs "in transit."

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 65 of the Complaint to admit or deny, and this paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendants lack sufficient information to form a belief as to the truth of the allegations and, on that basis, deny the allegations.

66. When integrated and embedded into a website, Fullstory Session Replay software is not akin to a tape recorder or a "tool" used by one party to simply record the other. Instead, it involves Fullstory, a separate and distinct third-party entity from the parties in the conversation, using the Fullstory Session Replay software to eavesdrop on, record, extract information from, and analyze a conversation to which it is not a party. This is so because Fullstory itself is collecting the content of any conversation. That information is then analyzed by Fullstory before being provided to any entity that was a party to the conversation.

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 66 of the Complaint to admit or deny and this paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendants lack sufficient information to form a belief as to the truth of the allegations and, on that basis, deny the allegations.

67. Once Fullstory intercepts communications from a website, it has the ability to use such information for its own purposes. Fullstory's privacy policy acknowledges that it uses information collected from website users, meaning "a visitor to a website that uses the Fullstory Services or a client of a Fullstory

Customer"[46] to "[m]onitor the performance of [Fullstory's] Services" and "[m]anage, operate, and improve the Services and grow [its] business."[47] Therefore, Fullstory uses data collected from the Website for its own purposes.

**ANSWER:** Defendants admit that Fullstory's Session Replay may have been present on the Website at a certain time and that the sources quoted and cited in Paragraph 67 speak for themselves. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 67 of the Complaint and, on that basis, deny the allegations.

**H. How Defendants Disclosed Plaintiff's and Class Members' Protected Health Information and Assisted With Intercepting Communications**

68. Through the Third Parties' software, which Defendants installed, integrated, and embedded into the Website, Defendants shared UCSD Health patients' identities and online activity, including information and search results related to their private medical treatment.

**ANSWER:** Defendants deny the allegations in Paragraph 68 of the Complaint.

69. For example, when a patient entered the Website and searched for a doctor, the patient could search by name, specialty, condition, or location and, on information and belief, Defendants, through the Tracking Code, assisted with the interception of, and otherwise transmitted those terms to unauthorized third parties, including Facebook, Google, and Fullstory. For instance, if a patient searched for "pregnant," on information and belief, that exact text query was intercepted by, or otherwise disclosed to, unauthorized third parties, including Facebook, Google, and Fullstory, in the form of a full-string, detailed URL. Likewise, when patients viewed their test results on the Website, on information and belief, the Tracking Code allowed the interception and/or disclosure those communications and activities to unauthorized third parties, including Facebook, Google, and Fullstory.

[46] https://www.fullstory.com/legal/privacy-policy/.
[47] *Id.*

**ANSWER:** This paragraph alleges legal conclusions and hypotheticals to which no response is required. To the extent any response is required, the allegations require expert analysis or information in the possession of third parties, so Defendants lack sufficient information to form a belief as to the truth of the allegations and, on that basis, deny the allegations.

70. The following are examples of such full-string, detailed URLs from the Website: https://health.ucsd.edu/Pages/search.aspx?verticalUrl=Professionals.html&query=Cancer; https://health.ucsd.edu/pages/search.aspx?verticalUrl=Professionals.html&query=Dermatology; https://health.ucsd.edu/request_appt/video-visits/pages/express-carevideo.aspx.

**ANSWER:** Defendants admit that the URLs in this paragraph speak for themselves and deny any other interpretations, allegations, or legal conclusions. The allegations otherwise require expert analysis, so Defendants lack sufficient information to form a belief as to the truth of the allegations and, on that basis, denies the allegations.

71. These full-string, detailed URLs contain PHI. For example, the first listed URL, https://health.ucsd.edu/Pages/search.aspx?verticalUrl=Professionals.html&query=Cancer, informs third parties who receive the URL that the patient who navigated to this page on UCSD Health's Website was attempting to search for medical care by finding a health care professional specializing in cancer.

**ANSWER:** Defendants deny the allegations in Paragraph 71 of the Complaint.

72. Each time Defendants assisted with the interception of, or otherwise disclosed, Website users' communications to unauthorized third parties, they also disclosed a patient's PII, including their Facebook ID ("FID"). A FID is a unique and persistent identifier that Facebook assigns to each user. With it, any ordinary person

can look up the user's Facebook profile and name. Notably, while Facebook can easily identify any individual on its Facebook platform with only their unique FID, so too can any ordinary person who comes into possession of an FID. Facebook admits as much on its website.[48] Indeed, ordinary persons who come into possession of the FID can connect to any Facebook profile.

**ANSWER:** Defendants admit that the source cited in Paragraph 72 speaks for itself and otherwise deny the allegations in Paragraph 72 of the Complaint.

73. A user who accessed the Website while logged into Facebook transmitted what is known as a "c-user cookie" to Facebook, which contained that user's unencrypted Facebook ID.

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 73 of the Complaint to admit or deny. To the extent a response is required, Defendants lack sufficient knowledge and information to form a belief as to the truth of the allegations and, on that basis, deny the allegations.

74. When a visitor's browser had recently logged out of an account, Facebook compelled the visitor's browser to send a smaller set of cookies.

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 74 of the Complaint to admit or deny. To the extent a response is required, Defendants lack sufficient knowledge and information to form a belief as to the truth of the allegations and, on that basis, deny the allegations.

75. One such cookie was the "fr cookie" which contained, at least, an encrypted Facebook ID and browser identifier.[49] Facebook, at a minimum, used the fr cookie to identify users.[50]

---

[48] META, *How usernames and user IDs are used on Facebook profiles*, https://www.facebook.com/help/211813265517027?locale=en_GB.

[49] DATA PROTECTION COMMISSIONER, FACEBOOK IRELAND LTD, REPORT OF REAUDIT (Sept. 21, 2012), http://www.europe-v-facebook.org/ODPC_Review.pdf.

[50] FACEBOOK, PRIVACY CENTER – COOKIES POLICY, https://www.facebook.com/privacy/policies/cookies/?subpage=subpage-1.3.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 75 of the Complaint to admit or deny. To the extent a response is required, Defendants admit that the source cited in Paragraph 75 speaks for itself and otherwise lack sufficient knowledge and information to form a belief as to the truth of the allegations and, on that basis, deny the allegations.

76. If a visitor had never created an account, an even smaller set of cookies was transmitted.

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 76 of the Complaint to admit or deny. To the extent a response is required, Defendants lack sufficient knowledge and information to form a belief as to the truth of the allegations and, on that basis, deny the allegations.

77. At each stage, Defendants also utilized the "_fbp cookie," which attached to a browser as a first-party cookie, and which Facebook used to identify a browser and a user.[51]

**ANSWER:** Defendants admit that the source cited in Paragraph 77 speaks for itself and otherwise are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 77 of the Complaint and, on that basis, deny the allegations.

78. The c-user cookie expires after 90 days if the user checked the "keep me logged in" checkbox on the website.[52] Otherwise, the c-user cookie is cleared when the browser exits.[53]

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 78 of the Complaint to admit or deny. To the extent a response is required, Defendants admit that the sources cited in Paragraph 78 speak for themselves and

---

[51] *Id.*
[52] Seralthan, FACEBOOK COOKIES ANALYSIS (Mar. 14, 2019), https://techexpertise.medium.com/facebook-cookies-analysis-e1cf6ffbdf8a.
[53] *Id.*

otherwise lack sufficient knowledge and information to form a belief as to the truth of the allegations and, on that basis, deny the allegations.

79. The fr cookie expires after 90 days unless the visitor's browser logs back into Facebook.[54] If that happens, the time resets, and another 90 days begins to accrue.[55]

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 79 of the Complaint to admit or deny. To the extent a response is required, Defendants admit that the sources cited in Paragraph 79 speak for themselves and otherwise lack sufficient knowledge and information to form a belief as to the truth of the allegations and, on that basis, deny the allegations.

80. The _fbp cookie expires after 90 days unless the visitor's browser accesses the same website.[56] If that happens, the time resets, and another 90 days begins to accrue.[57]

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 80 of the Complaint to admit or deny. To the extent a response is required, Defendants admit that the sources cited in Paragraph 80 speak for themselves and otherwise lack sufficient knowledge and information to form a belief as to the truth of the allegations and, on that basis, deny the allegations.

81. The Meta Pixel used both first- and third-party cookies. A first-party cookie is "created by the website the user is visiting"—i.e., the Website.[58] A third-party cookie is "created by a website with a domain name other than the one the user is currently visiting"—i.e., Meta.[59] The _fbp cookie was always transmitted as a first-

---

[54] *See id.*
[55] Confirmable through developer tools.
[56] FACEBOOK, PRIVACY CENTER – COOKIES POLICY, https://www.facebook.com/privacy/policies/cookies/?subpage=subpage-1.3.
[57] Also confirmable through developer tools.
[58] PC MAG, FIRST-PARTY COOKIE, https://www.pcmag.com/encyclopedia/term/firstparty-cookie. This is confirmable by using developer tools to inspect a website's cookies and track network activity.
[59] PC MAG, THIRD-PARTY COOKIE, https://www.pcmag.com/encyclopedia/term/thirdparty-cookie. This is also confirmable by tracking network activity.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

party cookie. A duplicate _fbp cookie was sometimes sent as a third-party cookie, depending on whether the browser had recently logged into Facebook.

**ANSWER:** There are no factual allegations directed at Defendants in Paragraph 81 of the Complaint to admit or deny. To the extent a response is required, Defendants admit that the sources quoted and cited in Paragraph 81 speak for themselves and otherwise lack sufficient knowledge and information to form a belief as to the truth of the allegations and, on that basis, deny the allegations.

82. Meta, at a minimum, used the fr, _fbp, and c_user cookies to link to Facebook IDs and corresponding Facebook profiles. Defendants sent these identifiers alongside the event data.

**ANSWER:** To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 82 of the Complaint and, on that basis, deny the allegations.

83. Plaintiff and Class Members never consented, agreed, authorized, or otherwise permitted Defendants to allow the interception of, or otherwise disclose, their Private Information. Plaintiff and Class Members were never provided with any written notice that Defendants allowed the interception of, or otherwise disclosed, the Private Information of users of the Website, nor were they provided any means of opting out of such disclosures. Defendants nonetheless knowingly allowed the interception of, and otherwise disclosed, Plaintiff's and Class Members' PII and PHI and confidential communications to Meta.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 83 of the Complaint relating to Plaintiff's authorization or lack thereof and, on that basis, deny the allegation. Defendants deny the remaining allegations in Paragraph 83 of the Complaint.

84. By law, Plaintiff and Class Members are entitled to privacy in their Private Information and confidential communications. Defendants deprived Plaintiff and Class Members of their privacy rights when Defendants: (a) implemented a system that surreptitiously tracked, recorded, and allowed the interception of, and otherwise disclosed, Plaintiff's and Class Members' Private Information; (b) allowed the interception of, and otherwise disclosed, Plaintiff's and Class Members' confidential communications by or to, inter alia, Meta, Google, and Fullstory—unauthorized third-party eavesdroppers; and (c) undertook this pattern of conduct without notifying Plaintiff and Class Members and without obtaining their express written consent.

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants deny the allegations.

**I. The Website Allowed the Interception of, and Otherwise Disclosed, Plaintiff's and Class Members' Private Information by and to Unauthorized Third Parties**

85. The Website is accessible on mobile devices and desktop computers, and UCSD Health encourages its patients to use the Website to schedule medical appointments, search for health care providers, research their symptoms or medical conditions and find treatment options, locate information about its medical facilities and the services offered at those facilities, register for online classes and events (such as tours for expectant parents), and more.

**ANSWER:** Defendants admit that UCSD Health's website is accessible on mobile devices and desktop computers, otherwise, the UCSD Health website speaks for itself, and Defendants deny the allegations, including any other interpretations or legal conclusions regarding UCSD Health's website.

86. The Website is undoubtedly used to communicate medical information in the course of seeking treatment, but Defendants nonetheless installed the Tracking Code and allowed the interception of, and otherwise disclosed, the Private

Information of Plaintiff and Class Members with unauthorized third parties, including Meta, Google, and Fullstory.

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants deny the allegations.

87. The Tracking Code tracks users as they navigate through the Website and simultaneously transmits to unauthorized third parties, including Meta, Google, and Fullstory, the users' communications made via the Website, including which pages are visited, which buttons are clicked, specific information users enter into search bars and text boxes (e.g., "I have early onset dementia"), and other information including a patient's IP address.[60] On information and belief, the communications the unauthorized third parties received contained Private Information, including but not limited to, medical treatment sought, medical conditions, information pertaining to medical appointments and the selected physician, specific button/menu selections, and content (such as searches for symptoms or treatment options or queries like "Do I have COVID?") typed into free text boxes. This information was sent alongside individuals' PII, thereby allowing a particular individual's identity to be linked to their online activity and Private Information.

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants admit that the source cited in Paragraph 87 speaks for itself. The allegations otherwise require expert analysis or information in the possession of third parties, so Defendants lack sufficient information to form a belief as to the truth of the allegations and on that basis, deny the allegations.

88. As described by the HHS Bulletin, this is PHI even if the visitor has no previous relationship with UCSD Health because "the information connects the individual to the regulated entity (i.e., it is indicative that the individual has received or will receive health care services or benefits from the covered entity), and thus

[60] https://developers.facebook.com/docs/meta-Analytics Code/.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

relates to the individual's past, present, or future health or health care or payment for care."[61]

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants admit that the source quoted and cited in Paragraph 88 speaks for itself and otherwise deny the allegations.

89. Moreover, UCSD Health acknowledged in an online data notice published on March 16, 2023 that the appointment scheduling software used by Plaintiff and Class Members on the Website disclosed "first and last name, date of birth, email address, IP address, third-party cookies, reason for visit, and insurance type (e.g., PPO, HMO, Other)."[62] As noted by the HHS Bulletin this is PHI and written authorization is required to before any disclosure can be made:

> This information might include an individual's medical record number, home or email address, or dates of appointments, as well as an individual's IP address or geographic location, medical device IDs, or any unique identifying code. All such [information] collected on a regulated entity's website or mobile app generally is PHI.

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants admit that the "online data notice published on March 16, 2023," and the "HHS bulletin" speak for themselves and deny any other interpretations, allegations, or legal conclusions.

**J. Plaintiff's Experience**

90. Plaintiff John Doe is a UCSD Health patient and has used the Website for several years since early 2022. Plaintiff Doe routinely accesses the Website using the UCSD Health mobile application and has also used a website browser to access the Website. At UCSD Health's direction and encouragement, Plaintiff Doe used the Website to, inter alia, to schedule medical appointments, obtain medications, obtain test results, research specialty doctors, and schedule imaging. Solely as an example,

[61] *See* HHS Bulletin, § *How do the HIPAA Rules apply to regulated entities' use of tracking technologies?*, https://www.hhs.gov/hipaa/forprofessionals/privacy/guidance/hipaa-online-tracking/index.html.

[62] https://health.ucsd.edu/news/press-releases/2023-03-16-uc-san-diego-healthnotifies-patients-of-vendor-data-collection-issue/



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

in 2022 and 2024 Plaintiff Doe used the Website to search for a neurologist to treat his concussion.

**ANSWER:** Defendants lack sufficient information to form a belief as to the truth of the allegations and, on that basis, deny the allegations.

91. Plaintiff Doe reasonably expected that his online communications with UCSD Health were confidential, solely between himself and UCSD Health, and that such communications would not be transmitted to or intercepted by a third party.

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants lack sufficient information to form a belief as to the truth of the allegations and, on that basis, deny the allegations.

92. Based on Defendants' integration, installation and embedding of the Tracking Code on the Website, Defendants allowed Plaintiff's Private Information (including, but not limited to, communications about his neurologist search) to be intercepted by, and otherwise disclosed to, unauthorized third parties, including Meta, Google, and Fullstory, without Plaintiff's knowledge or consent.

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants deny the allegations.

93. Plaintiff submitted and communicated Private Information, including medical information, to UCSD Health via the Website. As a result of Defendants installing, integrating, and embedding the Tracking Code into the Website, those confidential and sensitive communications were intercepted by, and otherwise disclosed to, unauthorized and unknown third parties.

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants lack sufficient information to form a belief as to the truth of the allegations and, on that basis, deny the allegations.

94. Thus, among other things, Defendants aided and assisted third parties in intercepting Plaintiff's Private Information when he used the Website.

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants deny the allegations.

95. This is precisely the type of information that HIPAA requires health care providers to anonymize to protect the privacy of patients. Plaintiff's and Class Members' identities could be easily determined based on the IP addresses and/or reverse lookup from the collection of other identifying information that was improperly disclosed.

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants deny the allegations.

96. Through the process detailed in this Complaint, Defendants unlawfully assisted third parties with intercepting, and otherwise obtaining, Plaintiff's communications without his knowledge, consent, or express written authorization, as well as breached confidentiality and Plaintiff's right to privacy.

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants deny the allegations.

**K. Defendants' Conduct is Unlawful and Violated HIPAA Standards**

97. Under federal law, a healthcare provider may not disclose personally identifiable, non-public medical information about a patient, a potential patient, or household member of a patient for marketing purposes without the patient's express written authorization.[63]

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants admit that the source quoted and cited in Paragraph 97 speaks for itself and otherwise deny the allegations.

98. The HIPAA Privacy Rule, located at 45 CFR Part 160 and Subparts A and E of Part 164, "establishes national standards to protect individuals' medical

[63] HIPAA, 42 U.S.C. § 1320; 45 C.F.R. §§ 164.502, 164.508(a)(3), 164.514(b)(2)(i).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

records and other individually identifiable health information (collectively defined as 'protected health information') and applies to health plans, health care clearinghouses, and those health care providers that conduct certain health care transactions electronically."[64]

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants admit that 45 CFR Part 160 and Subparts A and E of Part 164 speak for themselves and deny any other interpretations, allegations, or legal conclusions.

99. The Privacy Rule broadly defines PHI as individually identifiable health information ("IIHI") that is "transmitted by electronic media; maintained in electronic media; or transmitted or maintained in any other form or medium." 45 C.F.R. § 160.103.

**ANSWER:** Defendants admit that 45 C.F.R. § 160.103 speaks for itself and deny any other interpretations, allegations, or legal conclusions.

100. IIHI is defined as "a subset of health information, including demographic information collected from an individual" that is: (1) "created or received by a health care provider, health plan, employer, or health care clearinghouse"; (2) "[r]elates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual"; and (3) either (a) "identifies the individual" or (b) "[w]ith respect to which there is a reasonable basis to believe the information can be used to identify the individual." 45 C.F.R. § 160.103.

**ANSWER:** Defendants admit that 45 C.F.R. § 160.103 speaks for itself and deny any other interpretations, allegations, or legal conclusions.

---

[64] HIPAA For Professionals, U.S. Dept. of Health & Hum. Servs., https://www.hhs.gov/hipaa/for-professionals/index.html.

101. Under the HIPPA de-identification rule, "health information is not individually identifiable only if": (1) an expert "determines that the risk is very small that the information could be used, alone or in combination with other reasonably available information, by an anticipated recipient to identify an individual who is a subject of the information" and "documents the methods and results of the analysis that justify such determination'"; or (2) "the following identifiers of the individual or of relatives, employers, or household members of the individual are removed;

A. Names;

***

H. Medical record numbers;

***

J. Account numbers;

***

M. Device identifiers and serial numbers;

N. Web Universal Resource Locators (URLs);

O. Internet Protocol (IP) address numbers; … and

***

R. Any other unique identifying number, characteristic, or code…; and

(ii) The covered entity does not have actual knowledge that the information could be used alone or in combination with other information to identify an individual who is a subject of the information.

45 C.F.R. § 160.514(b)(2).

**ANSWER:** Defendants admit that 45 C.F.R. § 160.514(b)(2) speaks for itself and deny any other interpretations, allegations, or legal conclusions.

102. The HIPAA Privacy Rule requires any "covered entity"—which includes health care providers—to maintain appropriate safeguards to protect the privacy of protected health information and sets limits and conditions on the uses and

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

disclosures that may be made of protected health information without authorization. 45 C.F.R. §§ 160.103, 164.502.

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants admit that 45 C.F.R. §§ 160.103, 164.502 speak for themselves and deny any other interpretations, allegations, or legal conclusions.

103. An individual or corporation violates the HIPAA Privacy Rule if it knowingly and in violation of 42 U.S.C. §§ 1320d-1320d-9 ("Part C"): "(1) uses or causes to be used a unique health identifier; [or] (2) obtains individually identifiable health information relating to an individual." The statute states that a "person . . . shall be considered to have obtained or disclosed individually identifiable health information in violation of [Part C] if the information is maintained by a covered entity . . . and the individual obtained or disclosed such information without authorization." 42 U.S.C. § 1320d-6.



**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants admit that 42 U.S.C. §§ 1320d-1320d-9 speak for themselves and deny any other interpretations, allegations, or legal conclusions.

104. The criminal and civil penalties imposed by 42 U.S.C. § 1320d-6 apply directly to a provider of healthcare, when it is knowingly disclosing individually identifiable health information relating to an individual, as those terms are defined under HIPAA.

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants admit that 42 U.S.C. § 1320d-6 speaks for itself and deny any other interpretations, allegations, or legal conclusions.

105. Violation of 42 U.S.C. § 1320d-6 is subject to criminal penalties. 42 U.S.C. § 1320d-6(b). There is a penalty enhancement where "the offense is

committed with intent to sell, transfer, or use individually identifiable health information for commercial advantage, personal gain, or malicious harm." In such cases, the entity that knowingly obtains individually identifiable health information relating to an individual shall "be fined not more than $250,000, imprisoned not more than 10 years, or both."

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants admit that 42 U.S.C. § 1320d-6 speaks for itself and deny any other interpretations, allegations, or legal conclusions.

106. Defendants are employees of UCSD Health, a provider of healthcare. At UCSD Health's direction, Defendants implemented, installed, and/or embedded the Tracking Code on the Website for UCSD Health, and thus, their actions violated the HIPAA Rules. While there is no private right of action under HIPAA and these violations do not constitute a cause of action in and of themselves, the violation of the HIPAA Rules provides context for the elements of Plaintiff's and Class members' underlying claims, including, inter alia: (1) the confidential nature of the information communicated to Defendant; (2) Plaintiff's and Class members' reasonable expectation of privacy in their confidential Private Information; (3) the highly offensive nature of Defendant's disclosure of Private Information; and (4) the fact that the Private Information communicated (including searches for specific symptoms, health conditions, or doctors, or the scheduling of appointments) constitutes the "contents" of the communication.

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants deny the allegations.

**<u>DELAYED DISCOVERY RULE</u>**

107. Plaintiff did not discover that Defendants allowed the interception of, and otherwise disclosed his PHI and PII and confidential communications by and to

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

unauthorized third parties, including Meta, Google, and Fullstory, until his retention of counsel around May 2025.

**ANSWER:** Defendants lack sufficient information to form a belief as to the truth of the allegations and on that basis, deny the allegations.

108. Plaintiff could not have made this discovery earlier because UCSD Health's use of the Tracking Code that enabled the Third Parties to intercept his PII and PHI was kept secret.

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants deny the allegations.

## CLASS ACTION ALLEGATIONS

109. Class Definition: Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and other similarly situated individuals defined as all persons in the United States who, during the class period, had their Private Information improperly intercepted by, or otherwise disclosed to, third parties as a result of using the Website. Plaintiff reserves the right to modify the class definition or add sub-classes as necessary prior to filing a motion for class certification.

**ANSWER:** Defendants admit that Plaintiff purports to bring this case as a class action, as defined in Paragraph 109 of the Complaint, but deny that this case is appropriate for class treatment as alleged.

110. The "Class Period" is the time period beginning on the date established by the Court's determination of any applicable statute of limitations, after considering of any tolling, concealment, and accrual issues, and ending on the date of entry of judgement.

**ANSWER:** Defendants admit that Plaintiff purports to bring this case as a class action with the specified Class Period but deny that this case is appropriate for class treatment as alleged.

111. Excluded from the Class are Defendants; anyone employed by counsel in this action; any judge to whom this case is assigned, his or her spouse and immediate family members; and members of the judge's staff.

**ANSWER:** Defendants admit that Plaintiff purports to bring this case as a class action subject to the exclusions in Paragraph 111 of the Complaint, but deny that this case is appropriate for class treatment as alleged.

112. Numerosity/Ascertainability. Members of the Class are so numerous that joinder of all members would be unfeasible and not practicable. The exact number of Class Members is unknown to Plaintiff at this time. However, it is estimated that there are at least thousands of individuals in the Class. The identity of such membership is readily ascertainable from non-party records, such as those from UCSD Health, Meta, Google, and Fullstory.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 112 of the Complaint and, on that basis, deny the allegations.

113. Typicality. Plaintiff's claims are typical of the claims of the Class because Plaintiff used the Websites and had his Private Information intercepted by, and otherwise disclosed to, third parties without Plaintiff's express written authorization or knowledge. Plaintiff's claims are based on the same legal theories as the claims of other Class Members.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 113 of the Complaint and, on that basis, deny the allegations. This paragraph also alleges legal conclusions to which no response is required.

114. Adequacy. Plaintiff is fully prepared to take all necessary steps to represent fairly and adequately the interests of the Class Members. Plaintiff's interests are coincident with, and not antagonistic to, those of the Class Members. Plaintiff is represented by attorneys with experience in the prosecution of class action

litigation generally and in the emerging field of digital privacy litigation specifically. Plaintiff's attorneys are committed to vigorously prosecuting this action on behalf of the Class Members.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 114 of the Complaint and, on that basis, deny the allegations. This paragraph also alleges legal conclusions to which no response is required.

115. Common Questions of Law and Fact Predominate/Well Defined Community of Interest. Questions of law and fact common to the Class Members predominate over questions that may affect only individual Class Members because Defendants have acted on grounds generally applicable to the Class. Such generally applicable conduct is inherent in Defendants' wrongful conduct. The following questions of law and fact are common to the Class:

a. Whether Defendants intentionally tapped the lines of internet communication between patients and their medical providers;

b. Whether the Website surreptitiously tracks personally identifiable information, protected health information, and related communications and allows for the simultaneous interception and/or disclosure of that information to third parties;

c. Whether third party entities that received Private Information from the Tracking Code are third-party eavesdroppers;

d. Whether Defendants' conduct, as alleged herein, constitutes an affirmative act of communication;

e. Whether Defendants' conduct, which allowed third parties to intercept Plaintiff's and Class Members' Private Information, resulted in a breach of confidentiality;

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

f. Whether Defendants violated Plaintiff's and Class Members' privacy rights by using the Tracking Code to allow for the interception and disclosure of Plaintiff's and Class Members' Private Information by and to third parties;

g. Whether Plaintiff and Class Members are entitled to damages under the Federal Wiretap Act; and

h. Whether Defendants' actions violated Plaintiff's and Class Members' privacy rights under the California Constitution.

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants deny the allegations contained in Paragraph 115 of the Complaint.

116. Superiority. Class action treatment is a superior method for the fair and efficient adjudication of the controversy. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweigh potential difficulties in management of this class action. Plaintiff is unaware of any special difficulty to be encountered in litigating this action that would preclude its maintenance as a class action.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 116 of the Complaint and, on that basis, deny the allegations. This paragraph also alleges legal conclusions to which no response is required.

## CLAIMS FOR RELIEF

### COUNT I

**Violation Of The Federal Wiretap Act,**
**18 U.S.C. § 2510, *et seq.***

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

117. Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein and brings this count individually and on behalf of the members of the Class.

**ANSWER:** Defendants restate and incorporate Paragraphs 1 through 116 as if fully stated herein.

118. The Federal Wiretap Act, as amended by the Electronic Communications Privacy Act of 1986, prohibits the intentional interception of the contents of any wire, oral, or electronic communications through the use of a device. 18 U.S.C. § 2511.

**ANSWER:** This paragraph contains a legal conclusion to which no response is required. To the extent a response is required, Defendants state that the contents of 18 U.S.C. § 2511 speak for themselves. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 118 of the Complaint and, on that basis, deny the allegations.

119. The Wiretap Act protects both the sending and receiving of communications.

**ANSWER:** This paragraph contains a legal conclusion to which no response is required. To the extent a response is required, Defendants state that the contents of the ECPA speak for themselves. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 119 of the Complaint and, on that basis, deny the allegations.

120. 18 U.S.C. § 2520(a) provides a private right of action to any person whose wire or electronic communications are intercepted, disclosed, or intentionally used in violation of Chapter 119.

**ANSWER:** This paragraph contains a legal conclusion to which no response is required. To the extent a response is required, Defendants state that the contents of 18 U.S.C. § 2520 speak for themselves. Defendants are without knowledge or

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

information sufficient to form a belief as to the truth of the allegations contained in Paragraph 120 of the Complaint and, on that basis, deny the allegations.

121. The transmissions of Plaintiff's Private Information to the Website qualifies as a "communication" under the ECPA's definition of 18 U.S.C. § 2510(12).

**ANSWER:** This paragraph contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations contained in Paragraph 121 of the Complaint.

122. **Electronic Communications.** The transmission of Private Information between Plaintiff and Class members and UCSD Health, with which they chose to exchange communications, are "transfer[s] of signs, signals, writing,…data, [and] intelligence of [some] nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photooptical system that affects interstate commerce" and are therefore "electronic communications" within the meaning of 18 U.S.C. § 2510(2).

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants admit that 18 U.S.C. § 2510(2) speaks for itself and deny any other interpretations, allegations, or legal conclusions and otherwise deny the remaining allegations.

123. **Content.** The ECPA defines content, when used with respect to electronic communications, to "include [] any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8).

**ANSWER:** This paragraph contains a legal conclusion to which no response is required. To the extent a response is required, Defendants state that the contents of 18 U.S.C. § 2510(8) speak for themselves, and deny all other allegations in Paragraph 123 of the Complaint.

124. **Interception.** The ECPA defines the interception as the "acquisition of the contents of any wire, electronic, or oral communication through the use of any

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

electronic, mechanical, or other device" and "contents…include any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(4), (8).

**ANSWER:** This paragraph contains a legal conclusion to which no response is required. To the extent a response is required, Defendants state that the contents of 18 U.S.C. § 2510(4), (8) speak for themselves, and deny all other allegations in Paragraph 124 of the Complaint.

125. **Electronic, Mechanical, or Other Device.** The ECPA defines "electronic, mechanical, or other device" as "any device…which can be used to intercept a[n]…electronic communication[.]" 18 U.S.C. § 2510(5). The following constitute "devices" within the meaning of 18 U.S.C. § 2510(5):

Plaintiff's and Class members' browsers;

a. Plaintiff's and Class members' computing devices;

b. UCSD Health's webservers; and

c. The Tracking Code deployed by Defendants to effectuate the sending and acquisition of patient communications.

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants admit that 18 U.S.C. § 2510(5) speaks for itself and deny any other interpretations, allegations, or legal conclusions and otherwise deny the remaining allegations.

126. By utilizing and embedding the Tracking Code on the Website, Defendants intentionally intercepted, endeavored to intercept, and procured another person to intercept, the electronic communications of Plaintiff and Class members, in violation of 18 U.S.C. § 2511(1)(a).

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants deny the allegations contained in Paragraph 126 of the Complaint.

127. Specifically, through Defendants' action of embedding the Tracking Code on the Website, which Defendants knew would track, store, and unlawfully transmit Plaintiff's and Class members' PII to Meta, Google, Fullstory, and other third parties, Defendants procured the Third Parties to intercept Plaintiff's and Class members' electronic communications. See 18 U.S.C. § 2511(1)(a).

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants deny the allegations contained in Paragraph 127 of the Complaint.

128. The communications Defendants allowed to be intercepted include, but are not limited to, communications to/from Plaintiff and Class members regarding Private Information, treatment, medication, and scheduling.

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants deny the allegations contained in Paragraph 128 of the Complaint.

129. By intentionally disclosing or endeavoring to disclose the electronic communications of the Plaintiff and Class members to the Third Parties, in the manner alleged herein, while knowing or having reason to know that the information was obtained through the interception of an electronic communication in violation of 18 U.S.C. § 2511(1)(a), Defendants violated 18 U.S.C. § 2511(1)(c).

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants deny the allegations contained in Paragraph 129 of the Complaint.

130. By intentionally using, or endeavoring to use, the contents of the electronic communications of Plaintiff and Class members for analytics and marketing purposes, while knowing or having reason to know that the information was obtained through the interception of an electronic communication in violation of 18 U.S.C. § 2511(1)(a), Defendants violated 18 U.S.C. § 2511(1)(d).

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants deny the allegations contained in Paragraph 130 of the Complaint.

131. **Unauthorized Purpose.** Defendants intentionally intercepted, and procured the Third Parties to intercept or endeavor to intercept, the contents of Plaintiff's and Class members' electronic communications for the purpose of committing a tortious act in violation of the California Constitution or laws of the United States or of any State – namely, invasion of privacy under the California Constitution, and a violation of HIPAA as described herein.

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants deny the allegations contained in Paragraph 131 of the Complaint.

132. Defendants intentionally used the wire or electronic communications to increase profit margins for UCSD Health. For instance, Defendants specifically used the Tracking Code to track and utilize Plaintiff's and Class members' Private Information for UCSD Health's financial gain including but not limited to using the tracked Private Information to target Plaintiff and Class members with advertisements on Facebook and other third-party platforms for marketing and retargeting purposes.

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants deny the allegations contained in Paragraph 132 of the Complaint.

133. Defendants were not acting under color of law to intercept or procure the Third Parties to intercept or endeavor to intercept, Plaintiff and the Class member's wire or electronic communications.

**ANSWER:** This paragraph contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations contained in Paragraph 133 of the Complaint.

134. Plaintiff and Class members did not authorize Defendants to acquire the content of their communications for purposes of invading Plaintiff's privacy by transmitting their Private Information via the Tracking Code or any other third-party platforms.

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants deny the allegations contained in Paragraph 134 of the Complaint.

135. Any purported consent that Defendants received from Plaintiff and Class members was not valid.

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants deny the allegations contained in Paragraph 135 of the Complaint.

136. In transmitting, acquiring, and procuring the Third Parties to intercept or endeavor to intercept the content of Plaintiff's and Class members' communications relating to the browsing of the Website, Defendants' purpose was tortious, criminal, and designed to violate federal and state legal provisions, including as described above the following: (1) a knowing intrusion into a private, place, conversation, or matter that would be highly offensive to a reasonable person; and (2) violations of HIPAA.

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent any response is required, Defendants deny the allegations contained in Paragraph 136 of the Complaint.

## COUNT II
## Invasion [of] Privacy Under California's Constitution

137. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein and brings this claim individually and on behalf of the proposed Class and Subclass.

**ANSWER:** Defendants restate and incorporate Paragraphs 1 through 136 as if fully stated herein.

138. Plaintiff and Class Members have an interest in: (1) precluding the dissemination and/or misuse of their sensitive, confidential communications about their PHI and PII; and (2) making personal decisions and/or conducting personal activities without observation, intrusion or interference, including, but not limited to, the right to visit and interact with various internet sites without being subjected to wiretaps without Plaintiff's and Class Members' knowledge or consent.

**ANSWER:** Defendants deny the allegations contained in Paragraph 138 of the Complaint.

139. At all relevant times, by installing and embedding the Tracking Code into the Website so that the Third Parties could intercept users' private communications with UCSD Health, Defendants intentionally invaded Plaintiff's and Class Members' privacy rights under the California Constitution by enabling the interception and disclosure of their private information.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations contained in Paragraph 139 of the Complaint.

140. Plaintiff and Class Members had a reasonable expectation that their communications involving their PHI and PII would remain confidential and that Defendants, their healthcare provider's employees, would not enable third parties' interception of this sensitive information given that Defendants did not provide Plaintiff and Class Members with notice of their practice of disclosures.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 140 of the Complaint regarding Plaintiff's and putative Class Members'

expectations and, on that basis, deny the allegations. Defendants deny the remaining allegations contained in Paragraph 140 of the Complaint.

141. Plaintiff and Class Members did not authorize Defendants to record and transmit Plaintiff's and Class Members' private communications involving their PHI and PII.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations contained in Paragraph 141 of the Complaint.

142. This invasion of privacy is highly offensive and serious in nature, scope, and impact because it relates to patients' private PHI and PII communications. Moreover, it constituted an egregious breach of the societal norms underlying the privacy right.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations contained in Paragraph 142 of the Complaint.

143. Accordingly, Plaintiff and Class Members seek all relief available for invasion of privacy claims under California's Constitution.

**ANSWER:** Defendants admit that Plaintiff and putative Class members purport to seek all relief available for alleged invasion of privacy, but deny that Plaintiff and putative Class members are entitled to any such relief sought in Paragraph 143 of the Complaint.

## PRAYER FOR RELIEF

Defendants deny that Plaintiff is entitled to any of the relief he seeks, and denies all allegations contained in the Prayer for Relief section of the Complaint.

## AFFIRMATIVE DEFENSES

Defendants state that the lack of discovery and the aggregated nature of Plaintiff's claims, including with respect to absent putative Class Members, makes an analysis of all potential affirmative defenses that might be applicable to Plaintiff's

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

claims and those of any given putative Class Member, including absent putative Class Members, infeasible at this time. Defendants expressly reserve the right to assert additional affirmative defenses as the case progresses. At this juncture, Defendants assert the following affirmative defenses:

1. Plaintiff's claims and those of the putative Class Members fail to state a claim on which relief can be granted.

2. Plaintiff's claims and those of the putative Class Members are barred by waiver.

3. Plaintiff's claims and those of the putative Class Members are barred to the extent they gave consent to the conduct alleged in the Complaint.

4. Plaintiff's claims and those of the putative Class Members are barred by release.

5. Plaintiff's claims and those of the putative Class Members are barred by estoppel.

6. Plaintiff's claims and those of the putative Class Members are barred by laches.

7. Plaintiff's claims and those of the putative Class Members are barred or reduced by their failure to mitigate damages.

8. Plaintiff's claims and those of the putative Class Members are barred or reduced because they are based on conduct that occurred, if at all, outside the statute of limitations.

9. Plaintiff's and the putative Class Members' damages, if any, were the result of a supervening and/or intervening cause, which actions bar, preclude and/or diminish Plaintiff's and the putative Class Members' recovery against Defendant.

10. Plaintiff's claims and those of the putative Class Members are barred, in whole or in part, because their alleged damages were caused by Plaintiff's or the putative Class Members' own actions or by a third party's.

11. Plaintiff's claims and those of the putative Class Members are barred, in whole or in part, by their assumption of risk.

12. Plaintiff's claims and those of the putative Class Members are barred, in whole or in part, by them granting a license.

13. Plaintiff's claims and those of the putative Class Members are barred, in whole or part, by the doctrine of election of remedies, because they seek inconsistent and conflicting relief that will more than make them whole.

14. Plaintiff's claims and those of the putative Class Members are barred, in whole or in part, because they have failed to join necessary and indispensable parties to this action.

15. Plaintiff's claims and those of the putative Class Members are barred, in whole or in part, because at all times Defendants acted in good faith and in compliance with any applicable statutes and/or regulations.

16. Plaintiff's claims and those of the putative Class Members must be reduced, in whole or part, by an appropriate set off to the extent that Plaintiff or the putative Class Members owe or have due any amounts to Defendants.

17. Plaintiff and the putative Class Members lack standing.

18. The imposition of aggregated, class-wide damages in this case would be excessive and violate Defendants' due process and other Constitutional rights.

19. This case is improper for resolution on a class-wide basis because the putative class does not meet the requirements of Federal Rule of Civil Procedure 23. Specifically, Plaintiff is not adequate representatives of any purported class; his claims are not typical; common questions of law or fact affecting the individual members of the class do not predominate; a class action is neither manageable nor superior; and/or there is no ascertainable class with a community of interest.

20. Plaintiff's and the putative Class Members' causes of action are barred, in whole or in part, because there is no basis for injunctive relief in this action.

21. Plaintiff and the putative Class Members have suffered no actual injury or legally cognizable damages and their purported damages, if any, are speculative and/or uncertain and therefore not compensable.

22. To the extent Plaintiff has suffered any injury, the injury resulted from Plaintiff intentionally placing his personal information at risk for purposes of manufacturing a legal claim against Defendants.

23. Defendants aver that if Plaintiff was injured and damaged as alleged, the injuries and damages are the results and omissions of others, not Defendants.

24. Plaintiff's and/or putative Class Members' claims are preempted, in whole or in part, by Federal law, and are barred as a result of HIPAA's prohibition of any private cause of action.

25. Plaintiff's claims are preempted in full or in part by the HITECH Act and similar statutes requiring patient access to electronic health records.

26. Plaintiff's use and agreement to the terms of use of websites, social media platforms, and other services is conduct that created an implied license for the information sharing alleged in the Complaint.

27. Plaintiff's continued act of taking advantage of the benefits and services provided in the websites and patient portal described in the Complaint after becoming aware of his claims constitute an implied release of those claims.

28. The information relating to the Plaintiff that is alleged to have been shared was publicly available or otherwise nonprivate information.

29. Plaintiff assumed the risk of any information about his web browsing being shared with third parties by voluntarily surfing the internet and using internet-based services.

30. Plaintiff's claims are barred in full or in part by the Dormant Commerce Clause.

31. Plaintiff's and the putative Class Members' claims are barred, in whole or in part, by the Communications Decency Act, 47 U.S.C. § 230(c).

32. The information relating to Plaintiff's web browsing that Defendants allegedly shared with third parties did not identify Plaintiff individually and therefore any violation of Plaintiff's privacy rights was caused by the actions of third parties.

33. Plaintiff's claims and the putative Class Members' claims are barred, in whole or in part, by the doctrine of unclean hands.

**DEFENDANTS' PRAYER FOR RELIEF**

WHEREFORE, Defendants pray as follows:

1. That Plaintiff take nothing by way of the Complaint;
2. That Plaintiff's Prayer for Relief be denied in its entirety;
3. That judgment be entered in favor of Defendants and against Plaintiff;
4. For costs of suit incurred herein;
5. For attorneys' fees and costs as permitted by law; and
6. For such other and further relief as the Court deems just as proper.

Dated: October 20, 2026,

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: 

Alexander Vitruk

*Attorney for Defendants*
JEFF ENGEL, ERIN LAVIGNA, TIMOTHY CIRAOLO, LAUREN HEDGPETH, SEAN HLAVAC, SANDRA PHILLIPS, JENNIFER LAWRENCE, KIM KENNEDY, HALLIE JOHNSON, and HALLIE JACOBS